UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

--------------------------------------------------------- x

Andrii Pryimachenko, an individual,          :
                                             :        Case No. 1:23-cv-10034-LAK-RWL
                    Plaintiff,               :
                                             :
          - against -                        :
                                             :
Home Box Office, Inc., a Delaware corporation; :
Sky UK Limited, a United Kingdom limited     :
company; and DOES 1-10,                      :
                                             :
                    Defendants.              x

--------------------------------------------------------- 

## <u>MEMORANDUM OF LAW IN SUPPORT OF HBO'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  PRELIMINARY STATEMENT ................................................................. 1

II.  BACKGROUND ................................................................................ 2

    A.  Plaintiff's Work ...................................................................... 2

    B.  HBO's *Chernobyl* ................................................................... 3

    C.  Plaintiff's Allegations ............................................................. 4

III.  LEGAL ARGUMENT ....................................................................... 5

    A.  Plaintiff's Infringement Claims Should Be Dismissed for Lack of Registration ......................................................................... 5

        1.  The Alleged Publication of the Video in Ukraine in 2016 Was Not the First Publication ................................................. 6

        2.  The Amended Complaint Does Not Allege Facts Sufficient to Establish When or How the Video Was First Published ............ 9

    B.  The Amended Complaint Does Not Allege HBO Copied Protectable Elements of the Video .......................................................... 10

        1.  The Elements of Plaintiff's Video Identified in the Amended Complaint Are Not Protectable ........................................... 13

        2.  Plaintiff Has Not Alleged Similarities as to the Selection and Arrangement of Visual Elements ........................................ 16

    C.  Plaintiff Fails to State a Claim for DMCA Violations ........................ 20

    D.  Plaintiff's Damages Should Be Limited to Three Years ..................... 22

IV.  CONCLUSION ............................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdin v. CBS Broad. Inc.*,
   971 F.3d 57 (2d Cir. 2020)..................................................................10, 11, 19

*Archie MD, Inc. v. Elsevier, Inc.*,
   2017 WL 3421167 (S.D.N.Y. Mar. 13, 2017) .................................................12, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................5

*BanxCorp v. Costco Wholesale Corp.*,
   723 F. Supp. 2d 596 (S.D.N.Y. 2010)..............................................................20

*Brown v. Netflix, Inc.*,
   462 F. Supp. 3d 453 (S.D.N.Y. 2020).............................................................20

*Brunson v. Cook*,
   2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023) .................................................7, 8

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)...........................................................................2

*Crowley v. Jones*,
   608 F. Supp. 3d 78 (S.D.N.Y. 2022)...............................................................21

*DigitAlb, Sh.a v. Setplex, LLC*,
   284 F. Supp. 3d 547 (S.D.N.Y. 2018)........................................................5, 9, 10

*Earth Flag Ltd. v. Alamo Flag Co.*,
   153 F. Supp. 2d 349 (S.D.N.Y. 2001).........................................................11, 16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991).............................................................................11, 16, 17, 18

*Gal v. Viacom Int'l, Inc.*,
   403 F. Supp. 2d 294 (S.D.N.Y. 2005)..............................................................13

*Golden v. NBCUniversal Media, LLC*,
   2023 WL 5434378 (S.D.N.Y. Aug. 23, 2023) ....................................................7

*Gottlieb Dev. LLC v Paramount Pictures Corp.*,
   590 F. Supp. 2d 625 (S.D.N.Y. 2008)..............................................................3

*Harris v. Simon & Schuster*,
   646 F. Supp. 2d 622 (S.D.N.Y. 2009)......................................................................14

*Int'l Med. Devices v. Cornell*,
   2022 WL 17080130 (C.D. Cal. Sept. 26, 2022) .........................................................8

*Jeehoon Park v. Skidmore, Owings & Merrill LLP*,
   2019 WL 9228987 (S.D.N.Y. Sept. 30, 2019)..........................................................21

*Kernal Records Oy v. Mosley*,
   794 F. Supp. 2d 1355 (S.D. Fla. 2011),
   *aff'd on other grounds*, 694 F.3d 1294 (11th Cir. 2012) ...........................................8

*Kimberley v. Penguin Random House*,
   2018 WL 1918614 (S.D.N.Y. Apr. 19, 2018)....................................................12, 13

*Kirk Kara Corp. v. Western Stone & Metal Corp.*,
   2020 WL 5991503 (C.D. Cal. Aug. 14, 2020)..........................................................22

*Lipman v. Massachusetts*,
   475 F.2d 565 (1st Cir. 1973)...........................................................................12, 13

*Lowell v. Lyft, Inc.*,
   352 F. Supp. 3d 248 (S.D.N.Y. 2018)........................................................................7

*Malibu Media, LLC v. Doe*,
   2019 WL 1454317 (S.D.N.Y. Apr. 2, 2019)...............................................................8

*McKenna v. Nassau Cnty.*,
   2023 WL 8455670 (E.D.N.Y. Dec. 6, 2023) ...........................................................14

*Mena v. Fox Ent. Grp.*,
   2012 WL 4741389 (S.D.N.Y. Sept. 29, 2012)..........................................................17

*Michael Grecco Prods, Inc. v. Time USA, LLC*,
   2021 WL 3192543 (S.D..N.Y. July 27, 2021) ..........................................................22

*Morrison v. Solomons*,
   494 F. Supp. 218 (S.D.N.Y. 1980) ..........................................................................11

*Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys Design, Inc.*,
   551 F. Supp. 3d 408 (S.D.N.Y. 2021).....................................................................14

*Nwosuocha v. Glover*,
   2023 WL 2632158 (S.D.N.Y. Mar. 24, 2023),
   *appeal docketed*, No. 23-703 (2d Cir. Apr. 21, 2023) .............................................13

*Peter F. Gaito Architecture v. Simone Dev. Corp., LLC*,
    602 F.3d 57 (2d Cir. 2010)............................................................................12, 18

*Psihoyos v. John Wiley & Sons, Inc.*,
    748 F.3d 120 (2d Cir. 2014)..................................................................................22

*Purohit v. Legend Pictures, LLC*,
    448 F. Supp. 3d 382 (D. Del. 2020)......................................................................14

*SHL Imaging v. Artisan House, Inc.*,
    117 F. Supp. 2d 301 (2d Cir. 2000) ..........................................................17, 18, 19

*Shull v. TBTF Prods., Inc.*,
    2021 WL 3027181 (2d. Cir. July 19, 2001)..........................................................12

*Sparaco v. Lawler, Matusky & Skelly Eng'rs LLP*,
    303 F.3d 460 (2d Cir. 2002)..................................................................................19

*Sweet Gisele, Inc. v. True Rock CEO, LLC*,
    2018 WL 4863650 (E.D.N.Y. Sept. 4, 2018),
    *R. & R. adopted*, 2018 WL 4863586 (E.D.N.Y. Sept. 28, 2018)........................17

*Tabak v. LifeDaily, LLC*,
    2021 WL 5235203 (S.D.N.Y. Nov. 9, 2021).......................................................21

*Torah Soft Ltd. v. Drosnin*,
    136 F. Supp. 2d 276 (S.D.N.Y. 2001)...................................................................16

*Tremblay v. OpenAI, Inc.*,
    2024 WL 557720 (N.D. Cal. Feb. 12, 2024) .......................................................22

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
    338 F.3d 127 (2d Cir. 2003)....................................................................11, 14, 17

*UAB "Planner 5D" v. Facebook, Inc.*,
    2019 WL 6219223 (N.D. Cal. Nov. 21, 2019) ....................................................10

*United States v. Hamilton*,
    583 F.2d 448 (9th Cir. 1978) ................................................................................11

*Ward v. Nat'l Geographic Soc'y*,
    208 F. Supp. 2d 429 (S.D.N.Y. 2002)..................................................................20

*Warner Bros., Inc. v. Am. Broad. Cos.*,
    720 F.2d 231 (2d Cir. 1983)......................................................................3, 11, 13

*Williams v. A&E TV Networks*,
    122 F. Supp. 3d 157 (S.D.N.Y. 2015)....................................................................3

*Wolstenholme v. Hirst,*
    271 F. Supp. 3d 625 (S.D.N.Y. 2017) ...................................................................18

*Yu Zhang v. Heineken N.V.,*
    2010 WL 11596643 (C.D. Cal. Sept. 29, 2010) ....................................................14

**Federal Statutes**

17 U.S.C.

    § 101 ...........................................................................................................5, 6, 7, 9

    § 411(a) ......................................................................................................................5

    § 505 ...................................................................................................................1, 23

    § 507 ........................................................................................................................22

    § 1202 ...............................................................................................................1, 20

**Other Authorities**

37 C.F.R. § 202.1 .............................................................................................................12

Compendium of U.S. Copyright Practices

    § 906.4 .....................................................................................................................12

    § 906.5 ...............................................................................................................12, 15

    § 913 ........................................................................................................................12

    § 1008.3(B) ...........................................................................................................6, 7

Federal Rules of Civil Procedure Rule 12(b)(6) ....................................................10, 13

4 NIMMER ON COPYRIGHT § 13.03[B][2][c] ...................................................................11

Defendant Home Box Office, Inc. ("HBO") submits this memorandum of law in support of its motion for an order dismissing the First Amended Complaint (Dkt. No. 17, the "Amended Complaint" or "AC") and awarding Defendants their attorneys' fees and costs pursuant to 17 U.S.C. § 505.[1]

## I.    PRELIMINARY STATEMENT

Plaintiff brings this copyright claim based on HBO's use of a 35-second clip of a historical phone call and a transcript of that phone call in its eight-part television series *Chernobyl*.  Neither the audio recording of the phone call, nor the words spoken in it, belong to Plaintiff.  Nevertheless, Plaintiff asserts HBO infringed his copyright in his audiovisual rendering of a transcript of that call made to look like a readout on a 1980s computer monitor.  Copyright law does not allow plaintiffs to claim ownership of commonplace elements in the manner Plaintiff attempts here, and his claims should be dismissed.

*First*, Plaintiff's infringement claims fall at the first hurdle because he has not satisfied the most basic requirement for commencing an infringement action – namely, registration of the allegedly infringed work.  Plaintiff's Amended Complaint tries to skirt the issue by alleging his work is a foreign one, but his allegations, showing he published the work widely on YouTube and elsewhere, do not exempt him from the registration requirement.

*Second*, Plaintiff fails to allege infringement because there is no substantial similarity between *Chernobyl* and Plaintiff's "original expression," if any.  The Amended Complaint does not identify *any* protectable elements of Plaintiff's work that HBO copied, and his claim amounts to an impermissible attempt to claim copyright over the idea of a retro-style computer display.

---

[1] Sky UK Limited is also named as a defendant in this lawsuit, but HBO understands it has not been served.

**Third**, Plaintiff's claim under the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 1202, premised on HBO's alleged deletion and falsification of copyright management information ("CMI") fails for numerous additional reasons. Not only does Plaintiff's failure to state a claim for infringement doom his DMCA claim, but the allegations of the Amended Complaint do not constitute either removal or falsification of copyright management information. In addition, Plaintiff fails to allege the mens rea element of his DMCA cause of action.

**Fourth**, Plaintiff has been aware of HBO's alleged infringement since before the three year statute of limitations period for copyright claims. His claims are time-barred to the extent they are based on alleged infringement that took place more than three years before the filing of this action.

Plaintiff has now twice attempted and failed to state a claim in this action. This Court should not offer him a third opportunity and should dismiss the Amended Complaint with prejudice and award HBO its costs and fees under the Copyright Act.

## II.    BACKGROUND

### A.    Plaintiff's Work

Plaintiff is a Ukrainian "professional artist working in script development, video shooting, and video editing." AC ¶¶4, 9. As is relevant here, Plaintiff created an audiovisual work lasting 1 minute and 9 seconds. AC ¶ 12; *see also* Студія Peredova, *The scariest phone call of the 20th century*, YOUTUBE (Mar. 18, 2013), https://tinyurl.com/2cyrxfhs (the "Video").[2] It consists of an accurate and historic phone call between an employee of the Chernobyl nuclear plant and the local fire department notifying the local fire department of an explosion at the plant (the "Phone Call"). Plaintiff does not own – and does not claim to own – any rights in the underlying phone call.

---

[2] The Video is incorporated by reference into the Amended Complaint because it forms the basis of Plaintiffs' claims. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted).

Plaintiff then plays a real-time transcript of the call in Ukrainian, in a font typical of computers from the period, and provides the option of turning on English subtitles. While it is not clear when or how Plaintiff first distributed the Video, he posted it to his studio's YouTube page on March 18, 2013. AC ¶ 12.

The Video has been registered with the Ukrainian Copyright Office, but is not registered in the United States. AC ¶ 14.

### B.    HBO's *Chernobyl*

Defendant HBO produced and distributed the HBO original miniseries *Chernobyl*, a historical drama limited miniseries centering on the infamous 1986 disaster at the Chernobyl nuclear plant in Ukraine.[3] *Chernobyl* tells the story of the explosion at one of the plant's reactors causing a nuclear meltdown, the initial efforts to limit the contamination of surrounding areas, and the subsequent cleanup efforts over the weeks and months following the disaster. The series consists of five episodes of approximately one hour each in length, and was released on HBO's television network and streaming platform between May 6 and June 3, 2019.

The first episode of the series depicts the initial explosion at the Chernobyl plant. Ten minutes and forty-three seconds into the episode, an excerpt of the historic Phone Call shorter than the one used in Plaintiff's Video is played. *See Chernobyl* Episode, 10:43 *et seq.* The audio of

---

[3] To enable the Court to compare the works-in-suit in their entirety, as the law requires, a DVD containing Episode 1 of *Chernobyl* (the "*Chernobyl* Episode"), is annexed as Exhibit 1 to the Declaration of Carl Mazurek. *See Warner Bros., Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 240-41 (2d Cir. 1983) (substantial similarity requires review of the two works at issue). On this motion to dismiss, this Court may review the entire first episode of *Chernobyl* because it is central to Plaintiff's copyright infringement claims and is referenced throughout the Amended Complaint. *See, e.g.*, *Gottlieb Dev. LLC v Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 629-30 n.1 (S.D.N.Y. 2008) (reviewing two works at issue, including DVD of defendant's movie attached to declaration in support of defendant's motion to dismiss, because they were "referred to in the complaint" and "integral … to [plaintiff's] claims" and finding that the works are not substantially similar); *Williams v. A&E TV Networks*, 122 F. Supp. 3d 157, 161 (S.D.N.Y. 2015) ("[T]he DVDs of the … first season of [defendant's allegedly infringing television show] are properly considered on the [12(b)(6)] motion because the Complaint extensively describes the content of the series."). All references to specific scenes within the *Chernobyl* Episode are cited herein by timecode.

this Phone Call is also paired with the visual depiction of a real-time transcription of the exchange in Ukrainian, along with an English translation in subtitle at the bottom of the screen.  *Id.*  The clip is approximately 35 seconds in duration.  *Id.*

### C.    Plaintiff's Allegations

On November 14, 2023, Plaintiff filed the original complaint in this action (Dkt. No. 1) (the "Complaint" or "Compl.").  The Complaint was sparsely pled, but alleged that the segment from the first episode of *Chernobyl* combining the Phone Call with a real-time transcription of the conversation copied the Video.  Compl. ¶¶ 14-18.  In addition, the Complaint alleged that the Defendants removed CMI from the Video, and distributed the Video with false CMI.  Compl. ¶¶ 35-41.  On this basis, Plaintiff brought claims for direct and vicarious copyright infringement (Compl. ¶¶ 23-33) and violation of the DMCA (Compl. ¶¶ 34-42).  While the Complaint acknowledged that the Video was not registered with the United States Copyright Office (Compl. ¶ 13), it claimed that the Video was a foreign work, and therefore exempt from the requirement that it be registered in the United States before Plaintiff could sue for infringement.  Compl. ¶ 12.

On January 8, 2024, Plaintiff filed the Amended Complaint.  The allegations in the Amended Complaint are largely identical to those in the original Complaint, with two notable additions.  First, the Amended Complaint alleges that the Video was first published in Ukraine when Plaintiff offered it for sale or license to PJSC Telaradiocompany Lux ("PSJT") in 2016.  AC ¶ 13.  Second, the Amended Complaint adds a paragraph listing the elements of the Video that Plaintiff claims are original to him, and therefore protectable.  AC ¶ 11.  These include "the presentation of a stylized digital terminal display reading out the phone call in real-time in red and black," the text "appear[ing] gradually with a 'burn-in' effect," and the Video being "stylized to have the effect of intermittent electronic interference," along with the selection and arrangement

of these elements. *Id.* The Amended Complaint brings the same three causes of action as the original Complaint.

## III.    LEGAL ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In applying this standard, the Court need not credit conclusory legal allegations or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

### A.    Plaintiff's Infringement Claims Should Be Dismissed for Lack of Registration

The Copyright Act bars any "civil action for infringement of the copyright in any United States work … until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). A plaintiff suing for infringement of an unregistered work bears the burden of affirmatively establishing that the work in question is not a "United States work," and therefore that its claim is exempt from the registration requirement. *See DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 555 (S.D.N.Y. 2018).

Whether a work is a "United States work" turns primarily on the circumstances of the work's first publication. A published work does not qualify as a United States work, and thus may be exempt from the registration requirement, only if it was first published in a foreign country. *See* 17 U.S.C. § 101 (defining "United States work"). However, if the work was first published in the United States or simultaneously in the United States and another country, it is a United States work and the plaintiff must register it in order to begin an action for infringement. *See id.* The

5

Copyright Act defines publication as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 101. While "[a] public performance or display of a work does not of itself constitute publication," publication includes "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display."  *Id.*  Applying these principles to the context of the Internet, the Copyright Office has instructed that an inference of publication arises when an author offers a work for distribution to "online streaming or download services" (Compendium of U.S. Copyright Practices § 1008.3(B)), or publicly displays a work online in a manner that "clearly authorize[s] the reproduction or distribution of that work."  *Id.*

Plaintiff concedes that the Video is not registered with the United States Copyright Office. AC ¶ 14.  However, the Amended Complaint claims that the Video "was first published in Ukraine" (and therefore qualifies as a foreign work exempt from the Copyright Act's registration requirement) because it was "first publicly offered for sale or license in Ukraine in 2016 to [PJSC], which is based in Lviv, Ukraine."  AC ¶ 13.  But even accepting as true the factual allegations of the Amended Complaint, they do not support Plaintiff's conclusory statement that the Video was first published in Ukraine and is exempt from the registration requirement.

**1.    The Alleged Publication of the Video in Ukraine in 2016 Was Not the First Publication**

The Amended Complaint confirms that Plaintiff's offering of the Video for sale or licensing to PJSC was not the first publication of that work, and therefore that transaction is irrelevant to the question of whether the video is a United States work.  Plaintiff alleges that prior to offering the Video for sale or license to PJSC in 2016, he "widely publicly displayed and disseminated the Subject Video, including by posting same to his studio's YouTube channel on March 18, 2013, which currently has 8.7 million views."  AC ¶ 12.  As explained above,

6

distributing a work over the Internet constitutes publication if the author clearly authorizes further reproduction or distribution of that work.  Compendium of U.S. Copyright Practices § 1008.3(B).  Here, the YouTube page for the Video provides a "Share" button (*see* AC ¶ 10, screenshot of YouTube page for Video), which allows users to distribute the Video via social networks and email.  *See Share Videos and Channels*, YOUTUBE, http://tinyurl.com/2pbwshu2.[4]  In addition, videos uploaded to YouTube may also be reproduced by users of the YouTube Premium service.  *See Watch Videos Offline with YouTube Premium*, YOUTUBE, http://tinyurl.com/yk8xbz5k (explaining YouTube Premium users may download videos).[5]  Thus, by posting the video to YouTube, Plaintiff plainly authorized further reproduction and distribution of the Video, thereby satisfying the requirements of publication.

Indeed, by uploading the Video to YouTube, Plaintiff also "offer[ed] to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display," and therefore fulfilled the statutory definition of publication for that reason as well.[6]  17 U.S.C. §101; *cf.* Compendium of U.S. Copyright Practices § 1008.3(B) (inference of publication where work is offered for distribution to "online streaming … services").

The court in *Brunson v. Cook*, 2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023), considered at length the question of whether a work is published for purposes of the Copyright Act when the

---

[4] The "Share" button was available at the time Plaintiff uploaded the Video to YouTube, and provided the same distribution capabilities.  *See* Mazurek Decl. Ex. 2 (webpage titled "YouTube Essentials" as it appeared in 2013, explaining users could "[s]are a YouTube video with your friends via email, social networks, or blog directly from the video page" by "[j]ust click[ing] the Share button underneath the video").  The Court may take judicial notice of YouTube webpages explaining the service's features or terms and conditions.  *See Lowell v. Lyft, Inc.*, 352 F. Supp. 3d 248, 263 n.5 (S.D.N.Y. 2018) (taking judicial notice of webpage explaining features of ride sharing service).  The Court may also take judicial notice of the contents of webpages accessed through the Wayback Machine.  *See Golden v. NBCUniversal Media, LLC*, 2023 WL 5434378, at *10 n. 14 (S.D.N.Y. Aug. 23, 2023) (collecting cases).
[5] The ability to download YouTube videos for offline viewing has been available since at least 2015.  *See* Mazurek Decl. Ex. 3 (webpage titled "Using YouTube Red benefits" as it appeared in 2015, explaining users of YouTube Red service could "[s]ave videos and playlists to watch offline when you aren't connected to the internet").
[6] Both the current YouTube terms of service, and those in effect in 2013, provide YouTube a license to distribute content uploaded to its service.  *See Terms of Service*, YOUTUBE, https://tinyurl.com/3vbhjwp7; Mazurek Decl. Ex. 4 (YouTube Terms of Service in effect in 2013).

author makes it available on YouTube. The court held that it is, for the two independent reasons outlined above. First, it found that YouTube's "share" function provided authorization for the work to be distributed by the public, satisfying the conditions outlined by the Copyright Office for when distribution on the Internet constitutes publication. *Id.* at *12. And second, in uploading the video to YouTube, the plaintiff "clearly offered to distribute the work to [YouTube] for the purposes of further distribution," thus meeting the statutory definition of publication. *Id.* at *14; *see also Int'l Med. Devices v. Cornell*, 2022 WL 17080130, at *9 (C.D. Cal. Sept. 26, 2022) (holding that uploading video to YouTube constitutes publication).

Posting the Video on YouTube made it available to the entire world at once, and therefore constituted simultaneous publication in the United States and all other countries. *See Kernal Records Oy v. Mosley*, 794 F. Supp. 2d 1355, 1367 (S.D. Fla. 2011) (holding publication on the internet satisfied the simultaneous publication requirement), *aff'd on other grounds*, 694 F.3d 1294 (11th Cir. 2012). Thus, to the extent Plaintiff's posting of the Video to YouTube was the first publication of the work, it would qualify as a United States work requiring registration in order to commence a claim for infringement. *See id.* However, the Court need not reach this issue, since to dismiss Plaintiff's claims it is sufficient that the Amended Complaint has not alleged the Video was first published abroad.

In short, Plaintiff published the Video when he posted it to YouTube, and first publication of the Video thus occurred by March 18, 2013 at latest – three years before Plaintiff allegedly offered it to PJSC. That earlier publication means Plaintiff has not alleged his Video is a foreign work exempt from registration. Plaintiff's concession that he has no registration dooms his claim.[7]

---

[7] Even if Plaintiff were belatedly to seek registration in the United State, this would not obviate the need for dismissal. *See Malibu Media, LLC v. Doe*, 2019 WL 1454317, at *1 (S.D.N.Y. Apr. 2, 2019) (copyright action filed prior to registration "must be dismissed notwithstanding a plaintiff's post-registration amendment").

### 2.    The Amended Complaint Does Not Allege Facts Sufficient to Establish When or How the Video Was First Published

Regardless of whether posting the Video to YouTube constituted publication, the Amended Complaint would still fail to carry Plaintiff's burden of establishing the Video was first published abroad because it does not plead facts sufficient to establish where or when first publication occurred.  Plaintiff alleges that his posting of the Video to YouTube was only one part of his "wide[] public[] display[] and disseminat[ion]" of the Video.  *See* AC ¶ 12 ("Prior to the acts complained of herein, Pryimachenko widely publicly displayed and disseminated the Subject Video, including by posting same to his studio's YouTube channel on March 18, 2013, which currently has 8.7 million views.").  But the Amended Complaint provides no information regarding when our how such display and distribution took place.  Thus, Plaintiff has not provided sufficient information to allow the Court to determine whether these other public displays constituted publication (for example, because they involved the "sale or other transfer of ownership," or "rental, lease, or lending" of the Video; *see* 17 U.S.C. §101), or if so, where publication occurred.

Courts regularly dismiss claims for infringement of unregistered works at the pleading stage where plaintiffs omit facts that would allow determination that the works in question were first published abroad.  For example, in *DigitAlb*, the plaintiff conceded that it had not registered the works in question but argued that they were foreign works exempt from the registration requirement, alleging the works were published outside of the United States, and that plaintiff had licensed distributors both within and outside of the United States to publish them.  284 F. Supp. 3d at 555.  The court granted the defendant's motion to dismiss, holding that these allegations did not meet the burden of showing the plaintiff's claims were exempt from the registration requirement.  Specifically, it observed that the allegations "do not identify where or when the programming was <u>first</u> published," and declined to find that "a work is exempt from registration

based on the <u>omission</u> of allegations indicating that the work is a United States work." *Id.* (emphasis in original); *see also UAB "Planner 5D" v. Facebook, Inc.*, 2019 WL 6219223, at \*7 (N.D. Cal. Nov. 21, 2019) (complaint did not establish exemption from registration requirement where plaintiff failed to allege sufficient details to determine whether the alleged display of works constituted publication).

Just like in *DigitAlb* and *UAB*, Plaintiff's omissions make it impossible to determine when or how the Video was first published. As such, the Amended Complaint fails to carry Plaintiff's burden of establishing that the Video is exempt from the Copyright Act's registration requirement, and Plaintiff's infringement claims should be dismissed.

### B.    The Amended Complaint Does Not Allege HBO Copied Protectable Elements of the Video

In the event the Court does not find that Plaintiff's infringement claims fail for lack of registration, it should nevertheless dismiss them because the Amended Complaint does not allege HBO copied protectable elements of the Video.

"To establish a claim of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Satisfaction of the second element requires the plaintiff to "demonstrate that: (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's work." *Id.* (citation, internal quotation marks, and alterations omitted) (affirming Rule 12(b)(6) dismissal of copyright claim for lack of substantial similarity). While similarities as to elements such as alleged common errors may be probative of actual copying, they do not support an inference of substantial similarity as to protectable elements of the

works at issue, and therefore cannot serve as a basis to avoid dismissal where the plaintiff does not adequately allege substantial similarity.  *See*, *e.g.*, *Morrison v. Solomons*, 494 F. Supp. 218, 224 (S.D.N.Y. 1980) ("The law of this Circuit casts considerable doubt upon the probative value of copied items as evidence of copyright violation.").  Rather, "*Feist* stands for the proposition that even admitted literal copying is not actionable when limited to unoriginal expression."  4 NIMMER ON COPYRIGHT § 13.03[B][2][c] (collecting cases).

"To qualify for copyright protection, a work must be original to the author."  *Feist*, 499 U.S. at 345.  This requires that the work be "independently created by the author (as opposed to copied from other works)" and possess "at least some minimal degree of creativity."  *Id.*  While "[t]he standard of originality is low, … it does exist."  *Id.* at 362.  Where the plaintiff's work is derivative of a work that is not protectable, like the recording of the Phone Call here, "copyright protection extends only to the non-trivial, original contributions of the derivative work's author."  *Earth Flag Ltd. v. Alamo Flag Co.*, 153 F. Supp. 2d 349, 353 (S.D.N.Y. 2001); *see also United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir. 1978) ("Trivial elements of compilation and arrangement … fall below the threshold of originality.").

To evaluate substantial similarly, the Court must "analyze the two works closely to figure out in what respects, if any, they are similar, and then determine whether these similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking."  *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134-35 (2d Cir. 2003).  In doing so, it must bear in mind several principles.  **First**, "it is axiomatic that copyright protection only extends to the *expression* of the author's idea, not to the idea itself."  *Warner Bros.*, 654 F.2d at 208 (emphasis added); *Abdin*, 971 F.3d at 68.  **Second**, under the merger doctrine, "an expression is not protectable if a given

idea is inseparably tied to that expression, since rigorously protecting the expression would confer a monopoly over the idea itself." *Archie MD, Inc. v. Elsevier, Inc.*, 2017 WL 3421167, at *7 (S.D.N.Y. Mar. 13, 2017) (citation, internal quotation marks, and alterations omitted). **Third**, verbatim transcriptions of words spoken by others lack originality on the part of the transcript's creator, and therefore are not separately protectable. *See*, *e.g.*, *Lipman v. Massachusetts*, 475 F.2d 565, 568 (1st Cir. 1973) ("Since transcription is by definition a verbatim recording of other persons' statements, there can be no originality in the reporter's product."); *Kimberley v. Penguin Random House*, 2018 WL 1918614, at *3 (S.D.N.Y. Apr. 19, 2018) ("verbatim reproduction of the statements of quotations of others" not entitled to copyright protection) (quoting *Hearn v. Meyer*, 664 F. Supp. 832, 845 (S.D.N.Y. 1987)). **Fourth**, a broad presumption of unprotectability applies to textual design and related decisions as to the visual appearance of letters and digits (as distinct from the words and numbers they convey). Thus, no one may claim protection over "mere variations of typographic ornamentation or lettering or coloring," including typeface, no matter how original it may be. *See* Compendium of U.S. Copyright Practices § 913 (citing 37 C.F.R. § 202.1(a)); *id.* § 906.4 (citing 37 C.F.R. § 202.1(a), (e)). Similarly, "the mere use of text effects …, while potentially separable [from typographic elements], is *de minimis* and not sufficient to support a registration." *Id.* § 906.4. And protection is not available for the "spatial format and layout design" of text. *Id.* § 906.5.

Where the works at issue are incorporated into the complaint, "[i]t is entirely appropriate" for courts to dismiss copyright infringement claims on a motion to dismiss where a comparison of the works at issue demonstrates that the alleged "similarity concerns only noncopyrightable elements of [plaintiff's] work." *Peter F. Gaito Architecture v. Simone Dev. Corp., LLC,* 602 F.3d 57, 63-65 (2d Cir. 2010) (citation omitted); *see also Shull v. TBTF Prods., Inc.*, 2021 WL 3027181,

at *2 (2d. Cir. July 19, 2001); *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 305 (S.D.N.Y. 2005)

("[T]here is ample authority for the proposition that a district court may make [a determination as

to substantial similarity] on a motion to dismiss for failure to state a claim under Rule 12(b)(6).");

*Nwosuocha v. Glover*, 2023 WL 2632158, at *6 (S.D.N.Y. Mar. 24, 2023), *appeal docketed*, No.

23-703 (2d Cir. Apr. 21, 2023).

### 1.    The Elements of Plaintiff's Video Identified in the Amended Complaint Are Not Protectable

Plaintiff does not dispute that the audio recording of the phone call is not original to him.

AC ¶ 11.  Nevertheless, the Amended Complaint claims the Video is protectable as an "original

audiovisual artwork" because "[a]ll of the visual elements of the Subject Video are original and

creative contributions by [Plaintiff]."  AC ¶¶ 10-11.  Specifically, he claims originality in "the

presentation of a stylized digital terminal display reading out the phone call in real-time in red and

black"; the text "appear[ing] gradually with a 'burn-in' effect"; the visual depiction of "the effect

of intermittent electronic interference"; and the selection and arrangement of these elements.  AC

¶ 11.  As an initial matter, "all the visual elements" of the Video are *not* original to Plaintiff,

because the primary "visual element" – the words that appear on the screen – was not created by

him; rather, the words are simply a transcription of the historical Phone Call, and he therefore can

claim no copyright in them.  *See Lipman*, 475 F.2d at 568; *Kimberley*, 2018 WL 1918614, at *3.

Nor are any of the specific elements identified in the Amended Complaint protectable.

The decision to display a real-time text readout of the Phone Call is an unprotectable idea,

as is the decision to do so using "the presentation of a stylized digital terminal display"; any

copyright protection extends only to the manner in which the ideas are expressed.  *Warner Bros.*,

654 F.2d at 208.  Here, the *expression* of those ideas in the Video consists entirely of unprotectable

elements:

13

- **Red text on black background**: As explained above, Plaintiff's choices of the typeface and color of lettering are not copyrightable, nor is the layout of the text on the screen. *See supra* at 12. Courts have rejected similar attempts to claim copyright in combinations of typeface and color scheme. *See*, *e.g.*, *Harris v. Simon & Schuster*, 646 F. Supp. 2d 622, 632 (S.D.N.Y. 2009) (dismissing infringement claim based on font in which work was presented); *Yu Zhang v. Heineken N.V.*, 2010 WL 11596643, at *5 (C.D. Cal. Sept. 29, 2010) (dismissing infringement claim based on painting of Chinese characters, because "Chinese words, like English words, do not receive copyright protection simply because they are designed more ornately or with greater embellishment"); *see also Tufenkian*, 338 F.3d at 132 (copyright protection excludes "both the generic shape of the letter 'L' and all of the elaborately more specific 'L's' from the hundreds of years of font designs"); *Purohit v. Legend Pictures, LLC*, 448 F. Supp. 3d 382, 388-89 (D. Del. 2020) ("serif font with white text on a colored background" and use of "a curly 'S,' and a descending stroke of the 'R'" unprotectable).

- **Blinking cursor**: While Plaintiff does not specifically identify the blinking cursor as a protectable element of the Video, it is presumably among the visual effects constituting the "stylized digital terminal display" in which Plaintiff claims originality. But a flashing cursor in this style is a standard feature of computers from the 1980s, the era in which the Chernobyl Phone Call took place.[8] As such, it is "inseparably tied" to the portrayal of a

---

[8] *See*, *e.g.*, Rotten Tomatoes Classic Trailers, *WarGames Official Trailer #1 - Dabney Coleman Movie (1983) HD*, YOUTUBE, https://tinyurl.com/mr63w74f, 0:49; Ackley Irons, *HIDE and SEEK 1983 compute movie*, YOUTUBE, https://tinyurl.com/yxszzpm4, 6:15, 14:30, 23:20, 34:53, 39:22; LGR, *DEC VT320: The Classic 1987 Library Computer Terminal*, YOUTUBE, https://tinyurl.com/7bkzt9ya, 9:37. The Court may take judicial notice of publicly-available documents, including videos and social media posts. *See Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys Design, Inc.*, 551 F. Supp. 3d 408, 418 n. 2 (S.D.N.Y. 2021); *McKenna v. Nassau Cnty.*, 2023 WL 8455670, at *5-6 (E.D.N.Y. Dec. 6, 2023).

digital terminal display from that period and is unprotectable under the merger doctrine, since "protecting the expression would confer a monopoly over the idea itself." *Archie MD*, 2017 WL 3421167 at *7 (citation omitted).

- **"Burn-in" effect**: This term denotes an effect whereby letters displayed on the screen linger and fade rather than disappearing suddenly.[9]  The originality of such commonplace "text effects" is "*de minimis*, and not sufficient to support registration."  Compendium of U.S. Copyright Practices § 906.5.  It is also a common feature of computer monitors from the 1980s and is therefore unprotectable, as it merges with the portrayal of a digital terminal display from that period.  *See*, *Screen burn-in*, WIKIPEDIA, *available at* https://en.wikipedia.org/wiki/Screen_burn-in.

- **"[T]he effect of intermittent electronic interference"**: The Amended Complaint does not explain what visual elements make up the "effect of intermittent electronic interference" (AC ¶ 11), but presumably this refers to the flickering effect produced by the sporadic variation in the coloration of the letters.  *See* AC ¶ 11.  Like the flashing cursor and the burn-in effect, the flickering and inconsistent coloration of the screen is a common feature of computers from the era being depicted.  *See Flicker (screen)*, WIKIPEDIA *available at* https://en.wikipedia.org/wiki/Flicker_(screen).  It therefore merges with the portrayal of a digital terminal display from the period in question and is unprotectable under the merger doctrine.

Courts have repeatedly rejected copyright claims like the one here, in which the allegedly copied aspects of a work consist of unprotectable additions to an underlying work.  For example,

---

[9] The Amended Complaint describes the "burn-in" effect as one in which the letters *appear*, rather than disappear, gradually.  AC ¶ 11.  However there is no text in the Video that appears gradually.  In any event, the same analysis would apply whether the letters fade in or out.

in *Earth Flag Ltd. v. Alamo Flag Co.*, the plaintiff created a flag consisting of a public-domain photo of the Earth on a dark blue background, and sued for infringement based on defendant's production of a flag with the same elements. The court held that plaintiff could not claim copyright over the photo of the Earth, and the decision to place it on a dark blue background was an unprotectable idea that could only be conveyed in a limited number of ways. 153 F. Supp. 2d at 357-58. As a result, the alleged similarities between the works related only to unprotectable elements, and plaintiff's claim was dismissed for lack of substantial similarity. *Id.* at 356-58. Similarly, in *Torah Soft Ltd. v. Drosnin*, the court dismissed the plaintiff's copyright infringement claim and held there was no actionable copying where similarities between defendant's work and plaintiff's consisted of unoriginal changes to the text of the Torah. 136 F. Supp. 2d 276, 288-89 (S.D.N.Y. 2001).

Like the works at issue in *Earth Flag* and *Torah Soft*, Plaintiff's Video is based on a work in which Plaintiff cannot claim copyright. And like the plaintiffs in those cases, the only added elements that Plaintiff points to as having been copied by HBO copied are unprotectable. The same result should apply as in those cases, and Plaintiff's infringement claims should be dismissed.

### 2.    Plaintiff Has Not Alleged Similarities as to the Selection and Arrangement of Visual Elements

Recognizing that none of the individual elements of the Video is copyrightable, Plaintiff suggests that his work may nevertheless merit copyright protection due to its selection and arrangement of various elements. AC ¶ 11. This allegation cannot save his claims.

In the seminal case *Feist Publications, Inc. v. Rural Telephone Service Co.*, the Supreme Court assessed a copyright infringement claim based on the defendant's alleged copying of the plaintiff's alphabetically-organized telephone listings. 499 U.S. at 343-44. Although the plaintiff was able to point to evidence that defendant actually copied its work, such as the appearance of

common errors, and despite the fact the defendant reproduced significant amounts of plaintiff's work verbatim, the Court found no infringement. It explained that because plaintiff had merely organized material that was not subject to copyright protection (phone numbers) in an entirely unoriginal manner, its selection and arrangement lacked the minimal degree of creativity required for copyright protection. *Id.* at 362.

In the wake of *Feist*, courts in this circuit have held that while it is possible for the selection and arrangement of unprotectable elements to warrant protection, "the total concept and feel inquiry … is not carte blanche to rest findings of infringement on vague or amorphous determinations," which "'would invite an abdication of analysis' or 'end up erroneously protecting ideas.'" *Mena v. Fox Ent. Grp.*, 2012 WL 4741389, at *6 (S.D.N.Y. Sept. 29, 2012) (quoting *Tufenkian*, 338 F.3d at 134). Rather, courts must "take[] care to identify precisely the particular aesthetic decisions—original to the plaintiff and copied by the defendant—that might be thought to make the [works] similar in the aggregate." *Tufenkian*, 338 F.3d at 134. "Where the quantum of originality is slight … the resulting copyright is 'thin,' [and] infringement will be established only by very close copying." *Id.* at 135 n.11 (quoting *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996)). As a practical matter, in such cases "the plaintiff's works are only protected" – if at all – "from verbatim copying." *SHL Imaging v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 311 (2d Cir. 2000); *cf. Feist*, 499 U.S. at 362 (even verbatim copying not actionable). As a result, "[d]ifferences become particularly important where copyright protection is thin," and substantial similarity may be defeated even by differences that might be considered "trivial" in the context of more robust copyright. *Sweet Gisele, Inc. v. True Rock CEO, LLC*, 2018 WL 4863650, at *9 (E.D.N.Y. Sept. 4, 2018) (citation omitted), *R. & R. adopted*, 2018 WL 4863586 (E.D.N.Y. Sept. 28, 2018). Where similarities between the works in question are entirely attributable to

unprotectable elements, courts have not hesitated to dismiss infringement claims based on selection and arrangement. *See*, *e.g.*, *Peter F. Gaito*, 602 F.3d at 69  (affirming dismissal of claim for infringement of architectural plans where defendant "merely used the unprotectible concepts and ideas contained in plaintiffs' designs"); *Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 639 (S.D.N.Y. 2017) (granting motion to dismiss claim for infringement of jewelry designed, where similarities "relate[d] to [] nonprotectable element[s]").

This case is similar to *Feist*.  Just like the telephone book in that case, the selection and arrangement of the elements in the Video is unoriginal to Plaintiff: the order and pacing of the transcription is dictated by the historical Phone Call; the layout of the text, in which a change in speaker is signified by a new line of text, is standard practice for transcribing dialog; and the combination of the font, blinking cursor, and flickering screen merely reflects well-known features of computer monitors from the era in question. *See supra* at 14-15.  And like the plaintiff in *Feist*, Plaintiff attempts to shore up the similarities between the works by pointing to alleged common errors that they share (AC ¶ 18) – a fact that, even if true, may be probative of actual copying, but is irrelevant to substantial similarity. *See supra* at 10-11.  But as *Feist* instructed, such minimal similarities of selection and arrangement cannot give rise to actionable similarity.

Even if this Court were to find that the Video's selection and arrangement merited *some* protection, the copyright would be thin at best, such that it is "only protected from verbatim copying." *SHL Imaging*, 117 F. Supp. 2d at 311.  And here, examination of the two works demonstrates multiple differences as to their arrangement of the constituent elements.  To begin with, they do not use the same portions of the Phone Call: whereas the Video is over a minute long, *Chernobyl* plays only 35 seconds of the call. *Compare* Video *with Chernobyl* Episode, 10:43-11:19.  The respective works' "selection" of elements is therefore different.  In addition,

there are numerous visual differences between the works, most notably in the very different placement and orientation of the text on screen: whereas *Chernobyl* features small text in the middle of the frame, the Video places its text in much larger font aligned on the left-hand side, creating the impression (not present in *Chernobyl*) that the frame is entirely occupied by the display of a digital terminal.  *See* AC Ex. 1.  This impression is reinforced by the distortion of the text at the edges, imitating the effect of a convex display (*id.*); this element, too, is missing from *Chernobyl*, in which the text is shown in straight lines.  *Id.*  Other visual differences of arrangement include the coloring of the text, which is darker in *Chernobyl* than in the video, and *Chernobyl*'s use of a less rounded, more angular font.  *Id.*

While such differences might be insufficient in the face of a stronger copyright, they take on extreme importance in the context of a work like the Video that is only protectable, if at all, against "verbatim copying."  *SHL Imaging*, 117 F. Supp. 2d at 311.  That is because where the allegedly infringed work consists of unprotectable elements, courts must take care to ensure they do not "prevent others from copying such information" from the public domain, thereby "defeat[ing] the objectives of copyright by impeding rather than advancing the progress of knowledge."  *Sparaco v. Lawler, Matusky & Skelly Eng'rs LLP*, 303 F.3d 460, 466 (2d Cir. 2002); *see also Abdin*, 971 F.3d at 68 (finding defendant liable for copying work based on unprotectable idea "would improperly withdraw that idea from the public domain and stifle creativity").  To allow Plaintiff to claim protection over anything other than an exact copy of his work would amount to granting copyright over this style of computer display.  That is not a result the law allows, and Plaintiff may not hold HBO liable for its different expression of the same idea.

Because all of the alleged similarities between Plaintiff's and HBO's works relate to unprotectable elements in the Video, Plaintiff has failed to allege substantial similarity, and his infringement claims should be dismissed.[10]

### C.     Plaintiff Fails to State a Claim for DMCA Violations

Count Three of the Amended Complaint alleges that HBO violated the DMCA by (1) removing Plaintiff's CMI from the Video (AC ¶¶ 37, 42), and (2) distributing the Video with false CMI, by releasing and promoting *Chernobyl* under its own name (AC ¶¶ 37-39, 41).  To state a claim under the DMCA for removal of CMI, a plaintiff must allege "(1) the existence of CMI on the [plaintiff's work]; (2) removal and/or alteration of that information; (3) that the removal and/or alteration was done intentionally"; and (4) that this action was done "knowing, or, ... having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title."  *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (quoting 17 U.S.C. § 1202(b)) (alterations in original).  To state a claim for provision of false CMI, the plaintiff must allege the defendant both (1) knew that the CMI was false, and (2) provided or distributed the false CMI with the intent to induce, enable, facilitate, or conceal infringement.  *Ward v. Nat'l Geographic Soc'y*, 208 F. Supp. 2d 429, 449 (S.D.N.Y. 2002).  Plaintiff fails to state a claim for DMCA violations for at least four reasons.

*First*, Plaintiff has failed to allege that HBO's work infringed the copyright of the Video.  *See supra* at 10-20.  Claims based on removal of CMI and distribution of false CMI both require an underlying infringement.  *See* 17 U.S.C § 1202(a) and (b).  Thus where a defendant's alleged

---

[10] Because the Amended Complaint fails to state a claim for direct infringement, his claim for indirect infringement (Count II) necessarily fails as well.  "[T]here can be no contributory, vicarious or inducement of infringement where no direct infringement exists."  *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 464 (S.D.N.Y. 2020) (citing *Cariou v. Prince*, 714 F.3d 694, 712 (2d Cir. 2013), *aff'd*, 85 F. App'x 61 (2d Cir. 2021)).

copying of the plaintiff's work is not actionable, the plaintiff also cannot state a claim for removing or supplying false CMI in connection with that copying.

**Second**, Plaintiff fails to satisfy the scienter requirement of a DMCA claim, as the Amended Complaint fails to plead that HBO removed the CMI of the Video, or distributed the Video with false CMI, "with the intent to induce, enable, facilitate, or conceal infringement." The Amended Complaint parrots this element of the claim, but fails to allege any facts to support its conclusory assertions. *See* AC ¶¶ 41-42. Where the complaint "merely repeats the statutory language under DMCA and fails to provide sufficient facts or evidence for the Court to infer defendant's scienter," the plaintiff's DMCA claims should be dismissed. *Tabak v. LifeDaily, LLC*, 2021 WL 5235203, at *3 (S.D.N.Y. Nov. 9, 2021) (dismissing DMCA claim where plaintiff alleged "alteration and/or removal of said copyright management information was made by Defendant with reasonable grounds to know that its conduct would induce, enable, facilitate, or conceal its infringement of Plaintiff's copyright in the Photographs," but provided "[n]o additional factual averments").

**Third**, Plaintiff's allegation that HBO published and distributed *Chernobyl* under its own name does not constitute provision of false CMI. Courts have repeatedly held that where a defendant incorporates the plaintiff's work into its own, different work, and attaches its own name to the subsequent work, it does not thereby supply false CMI. *See*, *e.g.*, *Crowley v. Jones*, 608 F. Supp. 3d 78, 90 (S.D.N.Y. 2022) ("[W]here an allegedly infringing work is derivative to the original, a defendant does not violate the DMCA by printing his own name on the derivative work, even if the derivative work is an act of infringement."); *Jeehoon Park v. Skidmore, Owings & Merrill LLP*, 2019 WL 9228987, at *11 (S.D.N.Y. Sept. 30, 2019) (holding defendant did not supply false CMI when it "incorporated the plaintiff's copyright materials into its own work and

then applied its name as the author of the work"); *Michael Grecco Prods, Inc. v. Time USA, LLC*, 2021 WL 3192543, at \*5 (S.D..N.Y. July 27, 2021) ("[A] party that puts its own CMI on work distinct from work owned by a copyright holder is not liable under [§] 1202(a), even if the party's work incorporates the copyright holder's work.").

Here, Plaintiff's claim that HBO supplied false CMI is premised on the allegation that it "published the Subject Video via its mini-series *Chernobyl* and promotional materials, under HBO's own name." AC ¶ 38. *Chernobyl* is plainly a distinct work from the Video, with the allegedly infringing portions representing a fraction of its total run time. *See supra* at 3-4. Under established case law, distributing the series under HBO's name does not constitute false CMI.

**Fourth**, HBO did not remove the CMI from the Video. A DMCA claim for removal of CMI requires that the defendant make an identical copy of the plaintiff's work with the CMI *removed*; it is not enough that the defendant merely produced a similar work that *omits* the CMI. *See*, *e.g.*, *Tremblay v. OpenAI, Inc.*, 2024 WL 557720, at \*5 (N.D. Cal. Feb. 12, 2024); *Kirk Kara Corp. v. Western Stone & Metal Corp.*, 2020 WL 5991503, at \*6 (C.D. Cal. Aug. 14, 2020). As discussed above, *Chernobyl* did not reproduce of the Video verbatim, and therefore Plaintiff's claim based on removal of CMI fails.

### D.    Plaintiff's Damages Should Be Limited to Three Years

Even were this Court to allow the claims to proceed, the claims must be limited to any infringement within the last three years. A copyright action must be filed "within three years after the claim accrued." 17 U.S.C. § 507(b). The Second Circuit has held copyright infringement claims accrue upon "actual or constructive discovery of the relevant infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014). Here, Plaintiff's social media activity confirms he has known about HBO's alleged infringement since at least June 2019. *See Ukrainian film director claims that creator of TV miniseries Chernobyl used his video without his permission*,

GORDON (June 12, 2019), available at https://tinyurl.com/3j3chkff (linking to June 8, 2019 Facebook video in which plaintiff reported that *Chernobyl* had used his video without his consent). Thus, to the extent any alleged infringement on HBO's part dates to more than three years before the filing of this action, it is time barred and Plaintiff cannot recover for it.

The Amended Complaint alleges no such act of infringement. Rather, Plaintiff argues that any statutes of limitations here should be tolled due to the war in Ukraine, where he lives. AC ¶ 23. But he has alleged no facts indicating how he was affected by the war, and no doctrine or statute supports statutory tolling on the basis of vague references to world events. The Court should deny Plaintiff's request, and limit claims to those based on infringement that occurred more than three years before the filing of this action.

## IV. CONCLUSION

For the reasons set forth above, the Court should dismiss the Amended Complaint against HBO with prejudice. In the alternative, it should dismiss Plaintiff's claims to the extent they relate to infringement more than three years before the filing of the Complaint.

Further, 17 U.S.C. § 505 provides for "the recovery of full costs by or against any party" in connection with actions filed pursuant to the Copyright Act. The Court should grant HBO its costs in defending against Plaintiff's meritless claims.

Dated: March 6, 2024

DAVIS WRIGHT TREMAINE LLP

By:  */s/ Carl Mazurek*
Carl Mazurek
Rachel F. Strom
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Tel: (212) 603-6414
carlmazurek@dwt.com
rachelstrom@dwt.com

*Attorneys for Defendant Home Box Office, Inc.*