**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Andrii Pryimachenko, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Home Box Office, Inc., a Delaware corporation; Sky UK Limited, a United Kingdom limited company; and DOES 1-10.,<br><br>Defendants. | Civil Action No.: 1:23-cv-10034-LAK-RWL |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………………………...1

II.   LEGAL STANDARD…………………………………………………………..1

III.  ARGUMENT…………………………………………………………………...1

    A. Pryimachenko adequately pleads that his work is not a United States Work……………………………………………………………………………2

    B. The Complaint does not establish that the Subject Video was a United States Work that was simultaneously published globally via YouTube…………..5

        1. The Subject Videoo is not a U.S. Work because it was not "published" via YouTube………………………………………………5

            a. There was no distribution of copies………………………………6

            b. Copies were not offered for distribution to a group of persons for purposes of further distribution………………………………..7

            c. There was no transfer of any rights or intent to commercialize……………………………………………………..9

        2. If there was publication, it was not simultaneous around the globe…………………………………………………………………11

        3. Any publication was "limited" which would not require registration…………………………………………………………..12

        4. Defendants' evidence is irrelevant and inadmissible at this state……………………………………………………………………13

    C. Pryimachenko adequately pleads HBO's copyright infringement………………13

        1. Pryimachenko pleads ownership of a valid copyright…………………14

2. Pryimachenko pleads infringement…………………………………………15

3. The Complaint does not establish the Subject Video is not

   protectable………………………………………………………………...16

4. The pleadings do not establish a lack of substantial similarity………..17

5. The Subject Video enjoys broad copyright protection and HBO's

   copying was verbatim………………………………………………………18

D. Pryimachenko sufficiently states a claim under 17 U.S.C. § 1202(b)…………..19

E. Pryimachenko state a claim under § 1202(s)…………………………………20

F. Pryimachenko properly pleads Scienter…………………………………………21

G. HBO's use of its own name and branding is false CMI…………………………21

H. Violations of 1202(a) are not limited to identical copies of Plaintiff's

   work…………………………………………………………………………...22

I. The statute of limitations should be tolled and does not apply to all

   claims…………………………………………………………………………23

IV. LEAVE TO AMEND SHOULD BE GRANTED…………………………………24

V. THIS MOTION SHOULD DENIED…………………………………………...24

**Cases**

*Aaberg v. Francesca's Collections, Inc.*,

  2018 WL 1583037 (S.D.N.Y. Mar. 27, 2018) ..........................................................................21

*ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*,

  667 F. Supp. 3d 411 (S.D. Tex. 2023) ....................................................................................23

*American Vitagraph, Inc. v. Levy*,

  659 F.2d 1023 (9th Cir. 1981) ..................................................................................................9

*BanxCorp v. Costco Wholesale Corp.*,

  723 F. Supp. 2d 596, 723 F. Supp. 2d (S.D.N.Y. 2010) .........................................................20

*Beaudin v. Ben & Jerry's Homemade, Inc.*,

  95 F.3d 1 (2d Cir. 1996) ..........................................................................................................19

Bell Atlantic Corp. v. Twombly,

  550 U.S. 544 (2007) ...................................................................................................................1

*Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prod., Inc.*,

  2020 WL 3000343 (S.D.N.Y. 2020) ..................................................................................12, 13

*Boisson v. Banian, Ltd*,

  273 F.3d 262 (2d Cir. 2001) ....................................................................................................17

*Bounce Exch., Inc. v. Zeus Enter. Ltd.*,

  2015 WL 8579023 (S.D.N.Y. 2015) ........................................................................................23

*Brunson v. Cook*,

  2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023) .......................................................................8

*Canal+ Image UK Ltd. v. Lutvak*,

    773 F. Supp. 2d 419 (S.D.N.Y. 2011) ........................................................................17

*Chiykowski v. Goldner*,

    2020 WL 2834225 (S.D.N.Y. 2020) .......................................................................2, 4

*Concord Fabrics, Inc. v. Marcus Bros. Textile Corp.*,

    409 F.2d 1315 ..............................................................................................................19

*Crowley v. Jones*,

    608 F. Supp. 3d 78 (S.D.N.Y. 2022) ..........................................................................22

*Deluca v. Accessit Group, Inc.*,

    695 F. Supp. 2d 54 (S.D.N.Y. 2010) ..........................................................................13

*DigitAlb, Sh.a v. Setplex, LLC*,

    284 F. Supp. 3d 547 (S.D.N.Y. 2018) ..........................................................................4

*Dowdey v. Phoenix Films, Inc.*,

    1978 WL 951 (S.D.N.Y. 1978) ...................................................................................10

*E. Mishan & Sons, Inc. v. Marycana, Inc.*,

    662 F. Supp. 1339 (S.D.N.Y. 1987) ..............................................................................6

*Earth Flag, Ltd. v. Alamo Flag Co.*,

    154 F. Supp. 2d 663 (S.D.N.Y. 2001) ........................................................................18

*Edwards v. Raymond*,

    22 F. Supp. 3d 293 (S.D.N.Y. 2014) ..........................................................................15

*Einhorn v. Mergatroyd*,

    426 F.Supp.2d 189 (S.D.N.Y. 2006) .....................................................................10, 11

*Elliott v. Gouverneur Trib. Press, Inc.*,

    2014 WL 12598275 (N.D.N.Y. 2014) ................................................................1, 8

*Ets-Hokin v. Skyy Spirits, Inc.*,

    323 F.3d 763 (9th Cir. 2003) ................................................................19

*Feingold v. Rageon, Inc.*,

    472 F. Supp. 3d 94 (S.D.N.Y. 2020) ................................................................11

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,

    499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) ................................................15, 18

*Fischer v. Forrest*,

    2015 WL 195822 (S.D.N.Y. 2015) ................................................................22

*Folio Impressions, Inc. v. Byer Cal.*,

    937 F.2d 759 (2d Cir.1991) ................................................................14

*FragranceNet.com, Inc. v. FragranceX.com, Inc.*,

    679 F. Supp. 2d 312 (E.D.N.Y. 2010) ................................................................15, 16

*Gaste v. Kaiserman*,

    863 F.2d 1061 (2d Cir. 1988) ................................................................16

*Getaped.Com, Inc. v. Cangemi*,

    188 F.Supp 2d 398 (S.D.N.Y. 2002) ................................................................8

*Griffin v. Sheeran*,

    351 F. Supp. 3d 492 (SDNY 2019) ................................................................17

*Hamil Am. Inc. v. GFI*,

    193 F.3d 92 (2d Cir. 1999) ................................................................16

*Hanger v. Abbott*,

    6 Wall. 532, 18 L.Ed. 939 (1867) ........................................................24

*Horizon Comics Prods., Inc. v. Marvel Ent., LLC*,

    246 F. Supp. 3d 937 (S.D.N.Y. 2017) ................................................18

*Hub Floral Corp. v. Royal Brass Corp.*,

    454 F.2d 1226 (2d Cir. 1972) ........................................................6, 7

*In re AppHarvest Sec. Litig.*,

    2023 WL 4866233 (S.D.N.Y. 2023) ..................................................14

*In re DDAVP Direct Purchaser Antitrust Litig.*,

    585 F.3d 677 (2nd Cir. 2009) ........................................................21

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,

    886 F. Supp. 1120 (S.D.N.Y. 1995) ................................................14

*Jose Armando Bermudez & Co. v. Bermudez Intern.*,

    2000 WL 1225792 (S.D.N.Y. 2000) ..................................................2

*Klauber Bros., Inc. v. Jenny Yoo Collection, Inc.*,

    2017 WL 4082483 (S.D.N.Y. July 18, 2017) ....................................19

*Knitwaves, Inc. v. Lollytogs Ltd.* (Inc.),

    71 F.3d 996 (2d Cir. 1995) ........................................................17, 18

*Living Media India Ltd. v. Parekh (Harshad)*,

    1994 WL 68193 (S.D.N.Y. 1994) ....................................................14

*Matthew Bender & Co. v. W. Pub. Co.*,

    158 F.3d 674 (2d Cir. 1998) ........................................................16

*McLaren v. Chico's FAS, Inc.*,

    2010 WL 4615772 (S.D.N.Y. 2010) ....................................................................10

*Michael Grecco Prods., Inc. v. Alamy, Inc.*,

    372 F. Supp. 3d 131 (E.D.N.Y. 2019) ..............................................................1, 21

*Moberg v. 33T LLC*,

    666 F. Supp. 2d 415 (D. Del. 2009) .............................................................5, 11, 12

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,

    723 F.3d 192 (2d Cir. 2013) ..............................................................................13

*Nicholls v. Tufenkian Import/Export Ventures, Inc.*,

    2004 WL 1399187 (S.D.N.Y. June 23, 2004) ....................................................15

*Nicosia v. Amazon.com, Inc.*,

    834 F.3d 220 (2d Cir. 2016) ................................................................................1

*Norris v. Goldner*,

    2023 WL 5016472 (S.D.N.Y. 2023) ....................................................................3

*Osbourne v. United States*,

    164 F.2d 767 (2d Cir. 1947) ..............................................................................24

*Palmer/Kane LLC v. Gareth Stevens Publ'g*,

    2017 WL 3973957 (S.D.N.Y. Sept. 7, 2017) ......................................................8

*Park v. Skidmore, Owings & Merrill LLP*,

    2019 WL 9228987 (S.D.N.Y. 2019) ..................................................................22

*Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*,

    288 F. Supp. 2d 544 (S.D.N.Y. 2003) ..............................................................12

*Penske Media Corp. v. Shutterstock, Inc.*,

    548 F. Supp. 3d 370 (S.D.N.Y. 2021) ....................................................21

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,

    572 U.S. 663, 134 S. Ct. 1962, 188 L. Ed. 2d 979 (2014) ......................24

*Philips N. America LLC v. KPI Healthcare, Inc.*,

    2020 WL 3032765 (C.D. Cal. 2020) .......................................................25

*Philpot v. WOS, Inc.*,

    2019 WL 1767208 (W.D. Tex. 2019) .......................................................10

*Rogers v. Better Bus. Bureau of Metro. Houston, Inc.*,

    887 F. Supp. 2d 722 (S.D. Tex. 2012) ................................................6, 11

*Ronzani v. Sanofi S.A.*,

    899 F.2d 195 (2d Cir. 1990) ....................................................................25

*SMS Grp. Inc. v. Pharmaaid Corp.*,

    2023 WL 6929653 (E.D.N.Y. 2023) ........................................................19

*Spinelli v. Nat'l Football League*,

    903 F.3d 185 (2d Cir. 2018) ....................................................................14

*teamLab Inc. v. Museum of Dream Space, LLC*,

    650 F. Supp. 3d 934 (C.D. Cal. 2023) ..............................................3, 9, 11

*Torah Soft Ltd. v. Drosnin*,

    136 F. Supp. 2d 276 (S.D.N.Y. 2001) .....................................................18

*Tremblay v. OpenAI, Inc.*,

    2024 WL 557720 (N.D. Cal. 2024) .........................................................23

*U2 Home Ent., Inc. v. Kylin TV, Inc.*,

   2007 WL 2028108 (E.D.N.Y. 2007) ...........................................................2

*UAB "Planner 5D" v. Facebook, Inc.*,

   2019 WL 6219223 (N.D. Cal. 2019) ...........................................................5

*Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*,

   595 U.S. 178, 142 S. Ct. 941, 211 L. Ed. 2d 586 (2022) ...........................5

*Valverde v. Stinson*,

   224 F.3d 129 (2d Cir. 2000) .....................................................................24

*Van Cleef & Arpels Logistics, S.A. v. Jewelry*,

   547 F. Supp. 2d 356 (S.D.N.Y.) ...............................................................15

*Zerilli-Edelglass v. New York City Transit Auth.*,

   333 F.3d 74 (2d Cir. 2003) .......................................................................24

**Statutes**

17 U.S.C. § 101 ......................................................................... Passim

17 U.S.C. § 106 .................................................................................9

17 U.S.C. § 411 ........................................................................1, 4, 10

17 U.S.C. § 411(a) ...................................................................2, 3, 5

17 U.S.C. § 1202 .......................................................................21, 23

17 U.S.C. § 1202(a) ...........................................................................20

17 U.S.C. § 1202(b) ...................................................................3, 19, 20

17 U.S.C. § 1202(b)(2-3) ...................................................................20

17 U.S.C. § 1202(s) .............................................................................3

## Rules

Fed. R. Civ. P. 8(a) ...............................................................................................................1

Fed. R. Civ. P. 8(a)(2) .........................................................................................................1

Fed. R. Civ. P. 12(b)(6) .......................................................................................................1

Fed. R. Civ. P. 15 ..............................................................................................................24

## Other Authorities

H.R. Rep. No. 94-1476 (1976) ............................................................................................9

# I.     INTRODUCTION

Defendant, Home Box Office, Inc.'s ("HBO"), Motion to Dismiss ("Motion") Plaintiff,

Andreii Pryimachenko's ("Pryimachenko"), First Amended Complaint ("Complaint") should be

denied. HBO claims that Pryimachenko's audio-visual work ("Subject Video"), created in

Ukraine by a Ukraine resident and posted online from Ukraine, is a "U.S. Work" and thus

subject to the U.S. Copyright Office's registration requirement as set forth in 17 U.S.C. § 411.

HBO also argues that Pryimachenko's Subject Video is not sufficiently creative to be

protectable, but the work clearly meets the low threshold for protectability. The motion fails.

## II.     LEGAL STANDARD

A complaint is sufficient if it provides a "short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When deciding a Fed.R.Civ.P.

12(b)(6) motion to dismiss, the court must construe "the complaint liberally, accepting all factual

allegations as true, and drawing all reasonable inferences in the plaintiff's favor." *Nicosia v.

Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (citations omitted). And the court must ask

"whether any set of facts consistent with [the] complaint would give the plaintiff a right to

recover," and if the answer is yes, the motion should be denied. *Michael Grecco Prods., Inc. v.

Alamy, Inc.*, 372 F. Supp. 3d 131, 135 (E.D.N.Y. 2019) (other citations omitted). Moreover, the

"fact intensive nature of" the "publication" inquiry, discussed below, "demonstrates the

inappropriateness of summary judgment[,]" let alone dismissal. *Elliott v. Gouverneur Trib.

Press, Inc*., 2014 WL 12598275, at *3 (N.D.N.Y. 2014).

## III.     ARGUMENT

Pryimachenko's complaint gives HBO "fair notice of what the [..] claim is and the

grounds upon which it rests." *Twombly*, 550 U.S. at 555, quoting Fed. R. Civ. P. 8(a). In

copyright cases, "simply alleging present ownership by plaintiff, registration in compliance with the applicable statute and infringement by defendant" is sufficient to state a claim for copyright infringement. *U2 Home Ent., Inc. v. Kylin TV, Inc.*, 2007 WL 2028108, at *7 (E.D.N.Y. 2007). Pryimachenko does so, alleging creation of the Subject Video, an exemption from the registration requirement, and infringement by Defendants. Specifically, he asserts that HBO "infringed Pryimachenko's copyright by copying, publishing, distributing, and displaying the Subject Video to the public […] without Pryimachenko's authorization or consent" by "copying, reproducing, publicly displaying, distributing, and/or creating derivative works of the Subject Video in HBO and Sky's TV mini-series Chernobyl and in advertising and promotional videos for same." Complaint ¶ 15, 27. This is sufficient.

### A. Pryimachenko adequately pleads that his work is not a United States Work

Pryimachenko adequately pleads that he first published the Subject Video abroad and it is thus a non-U.S. Work exempt from the Copyright Act's registration requirement per the Berne Convention ("Berne"). The Copyright Act "requires that only a United States Work be registered or preregistered before a civil action for infringement can be instituted," and "non-United States Works—generally, works first published outside the United States in a foreign country that is a signatory to the Berne Convention—are exempt from registration." *Chiykowski v. Goldner*, 2020 WL 2834225, at *3 (S.D.N.Y. 2020)(citation omitted); *see also Jose Armando Bermudez & Co. v. Bermudez Intern.,* 2000 WL 1225792, at *10 (S.D.N.Y. 2000) ("[n]o proof of registration is required if the work for which plaintiff *see*ks protection has been authored in a foreign country covered by an applicable Convention"), citing 17 U.S.C. § 411(a)(remaining citation omitted).

Ukraine is a signatory to Berne.[1] The Copyright Act's registration requirement thus does not apply to any work that is not a United States Work—such as one first published in Ukraine.

The question of whether a work is a "United States or foreign work is inextricably intertwined with publication. A work is a "United States Work" only if it is (1) "first published" in the U.S. or "simultaneously published in the United States and another treaty party," or (2) unpublished and "all the authors of the work are nationals, domiciliaries, or habitual residents of the United States." *teamLab Inc. v. Museum of Dream Space, LLC*, 650 F. Supp. 3d 934, 945–46 (C.D. Cal. 2023)(citations omitted). The Subject Videos is not a U.S. Work.

Pryimachenko pleads that he first published "The Subject Video abroad in Ukraine, as he first publicly offered it for sale or license in Ukraine in 2016 to the company PJSC Telaradiocompany Lux, which is based in Lviv, Ukraine," and is therefore "exempt from the registration requirements set out in 17 U.S.C. § 411(a)." Complaint ¶ 13. Because Pryimachenko alleges the Subject Video was first published in Ukraine, his complaint is sufficient.

The Complaint also asserts the Subject Video is not a United States Work because it was authored by a non-U.S. resident. *See Norris v. Goldner*, 2023 WL 5016472, at *4 (S.D.N.Y. 2023)("Because Plaintiff is a British citizen and resident, they are entitled to copyright protection of their work that is either unpublished or was first published outside of the United States). Pryimachenko alleges that he "is an individual residing in Ukraine" Complaint, ¶ 4. Even if the Subject Video were unpublished, it is not a U.S. Work because it was authored by a non-resident.

HBO claims that Pryimachenko's Subject Video is a U.S work because he uploaded it to YouTube or that he failed to assert "when or how" he first published the video. Motion, pgs. 6, 9.

---

[1] See WIPO, Berne Notification No. 169 *Berne Convention for the Protection of Literary and Artistic Works Accession by Ukraine*, https://www.wipo.int/treaties/en/notifications/berne/treaty_berne_169.html (last visited on April 1, 2024).

Specifically, HBO claims that "by uploading the Video to YouTube, Plaintiff published the Subject Video because he "offer[ed] to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display." This argument is predicated upon YouTube's "share" and "download" buttons, but the download button **did not exist in 2013**, when Pryimachenko uploaded the Subject Video, and the share button may have existed in a different format and would not affect publication status in any event. At the very least, there is no admissible evidence that downloads and shares were allowed and acted to publish works in 2013, and such a fact is not clear from the face of the Complaint.

Nor does the Complaint fail for lack of specific allegations of "when or how" the Subject Video was first published because there is no such requirement. On the pleadings, "[a] party relying on the § 411 registration exemption 'must allege that the works are not United States Works within the meaning of [17 U.S.C.] § 101,'" and there is no requirement that they allege when or where they first published the work. *Chiykowski*, 2020 WL 2834225, at 2. Even if Pryimachenko were required to plead publication more specifically, he does. Pryimachenko expressly asserts how he published the work, including to whom he licensed the work, the licen*see*'s location, and the publication year. *See* Complaint ¶ 13.

HBO's cited authority is distinguishable. *DigitAlb* and *UAB* do not require dismissal for "omit[ing] facts that would allow determination that the works in question were first published abroad." Dkt. No. 27 pg. 9. In those cases, the plaintiffs failed to make *any* allegation that the works at issue were not U.S. Works and instead relied on "the omission of allegations indicating that the work is a United States Work." *See DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 555 (S.D.N.Y. 2018); *see also UAB "Planner 5D" v. Facebook, Inc.*, 2019 WL 6219223, at *6 (N.D. Cal. 2019). In contrast, Pryimachenko alleges with specificity that the Subject Video "was

first published abroad in Ukraine, as it was first publicly offered for sale or license in Ukraine in 2016," and thus is "exempt from the registration requirements set out in 17 U.S.C. § 411(a)." Complaint ¶ 13. Despite this, HBO invites the Court to speculate that Pryimachenko's display of his work before licensing same amounted to publication. Motion, pg. 9. The attempt fails.

**B.    The Complaint does not establish that the Subject Video was a United States Work that was simultaneously published globally via YouTube**

The face of the Complaint does not establish that the Subject Video is a U.S. Work, but rather expressly states that Pryimachenko resides in Ukraine and first published the work there. Complaint ¶¶ 4, 13. HBO claims that that Pryimachenko's Subject Video is a U.S. Work because posted it on YouTube in 2013, arguing that "distributing a work over the Internet constitutes publication if the author clearly authorizes further reproduction or distribution of that work." Motion, pg. 7. But this is unavailing. To determine whether Pryimachenko's works "are United States Works depends on the resolution of two issues: (1) whether the posting of plaintiff's photographs on the Internet is considered "publishing," and, if so, (2) whether "publishing" on the Internet causes the photographs to be published only in the country where the Internet site is located, or in every country around the world simultaneously." *Moberg v. 33T LLC*, 666 F. Supp. 2d 415, 421 (D. Del. 2009). As discussed below, the answer to both is "no."

**1.    The Subject Video is not a U.S. Work because it was not "published" via YouTube**

As with any statute, we start with the Copyright Act's text. *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 184, 142 S. Ct. 941, 946, 211 L. Ed. 2d 586 (2022)(when interpreting the Copyright Act, "we follow the text of the statute."). The statute at issue, 17 U.S.C. § 101, states in relevant part:

"Publication" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. **A public performance or display of a work does not of itself constitute publication.**

17 U.S.C. § 101 (emphasis added). In 2013, Pryimachenko uploaded the Subject Video to YouTube to publicly perform it to online viewers. This was not publication for three reasons:

### a.      There was no distribution of copies

Pryimachenko did not "distribute copies" of the Subject Video by uploading it to YouTube. The Copyright Act specifically the term "copies" as "material objects […] in which the work is first fixed." 17 U.S.C.A. § 101. Viewers of YouTube in 2013 did not receive "copies" of the Subject Video; they simply viewed it. And the "sale, rental, lease, or lending of a work would not suffice" to constitute "publication" without "the **actual distribution of copies** to the public." *Rogers v. Better Bus. Bureau of Metro. Houston, Inc*., 887 F. Supp. 2d 722, 733 (S.D. Tex. 2012)(emphasis added), citing 17 U.S.C. § 101. Here, there was a single "copy" of the Subject Video – the one Pryimachenko uploaded to YouTube. When he uploaded that single copy, he "fixed" it on the YouTube server. It was then displayed and performed to YouTube viewers. Copies, however, were *never* distributed. To be sure, even the distribution of a "relatively small number of copies" does not constitute publication; here there was only a single copy, and it was not distributed. *E. Mishan & Sons, Inc. v. Marycana, Inc*., 662 F. Supp. 1339, 1344 (S.D.N.Y. 1987). There was no publication via YouTube.

Indeed, there is no publication until the work has been "reproduced in copies for sale[.]" *Hub Floral Corp. v. Royal Brass Corp*., 454 F.2d 1226, 1229 (2d Cir. 1972)(discussing 1909 Act)(citations omitted). In *Hub*, like here, the copyrighted works were available to the public, but "were not sold, nor had other reproductions yet been produced for sale or made available to the

public." Id. The Court found that since the copyright holder "was not in a position to commence realizing the benefits of its unique design and the public had not been provided with reproductions, there was no publication. Id. (citations omitted). The same is true here.

**b.** **Copies were not offered for distribution to a group of persons for purposes of further distribution**

Pryimachenko, by uploading the Subject Video to YouTube did not "offer[] to "distribute" any "copies" of the video to a "group of persons." As set forth above, only one copy was made, and that copy was uploaded to be performed, as opposed to distributed. And he placed the Subject Video online for general display, making no offering of copies to a "group of persons." In this way, it was no different from hanging paintings in a gallery, or even screening a film in a public square, neither of which constitute publication. Indeed, the statute expressly carves out public displays from the definition of "publication." *See* 17 U.S.C. § 101.

HBO claims that "by posting the video to YouTube. [Pryimachenko] plainly authorized further reproduction and distribution of the [Subject Video] to a group of persons," but this is false because YouTube is a website and not a "group of persons." Motion, pg. 7. And per the Copyright Act's definition of publication, the *author* must be the one to distribute or offer to distribute the work. It does not include "authorizing" a third party to do so. And even if it did, viewers of the Subject Video had no right to further distribute copies, even if they could download a copy (and even this ability to download is unlikely). To be sure, the publication question focuses on the author's actions in distributing their work and not the recipients'. Even if a viewer could download or share a copy of the work, it would be the viewer, and not the author that engaged in the "distribution," which is not publication.

HBO cites *Brunson* but that case expressly relied upon the presence of multiple other entities as "the group of persons" the plaintiff offered its work to further distribution on YouTube. *Brunson v. Cook*, 2023 WL 2668498, at *10 (M.D. Tenn. Mar. 28, 2023).[2] Indeed, the *Brunson* court specifically noted that providing the work to a single entity like YouTube "is likely insufficient" for publication. Id. at 9.

There was no such group of intermediaries here. Pryimachenko did not authorize anyone to post the Subject Video on YouTube, let alone a group of persons, but posted it directly to YouTube himself. And YouTube is a single entity, one whose platform simply allows users to display their own content to the public, much like a gallery. Publication requires that the recipients of the work are offered the opportunity to buy or license the work but that is simply not the case, and thus the display on YouTube was not publication.

Nor did Pryimachenko offer to distribute copies of the Subject Video to YouTube's users for *further distribution* as would be required to publish. Pryimachenko only displayed the work to YouTube's users, who in 2013 had only the right to view the video and not make copies for further distribution or display. Even today, while a YouTube user may be able to save copies of certain videos, they do not have the legal right to distribute those copies.

While HBO claims YouTube users can do so through the "share" button, there is nothing in the Complaint to support this. And regardless, the share button does not create any additional

---

[2] HBO's reliance on *Brunson* further fails because it turns heavily on the decision in *Getaped.Com, Inc. v. Cangemi*, 188 F.Supp 2d 398 (S.D.N.Y. 2002) to support a finding that publication occurs when a work is made available on the internet. *Brunson*, 2023 WL 2668498, at 11 ("The reasoning of Getaped.Com is instructive here"). Courts of this District and others of the Second Circuit have repeatedly criticized the *Getaped* decision and declined to apply it in similar cases. *Palmer/Kane LLC v. Gareth Stevens Publ'g*, 2017 WL 3973957, at *12 (S.D.N.Y. Sept. 7, 2017); see also *Elliott v. Gouverneur Trib. Press, Inc.*, 2014 WL 12598275, at *3 (N.D.N.Y. Sept. 29, 2014)("The Getaped.com decision, however, has been widely criticized, and it is not clear that the decision should control on the facts of the present case")(collecting cases).

copies of the Subject Video or further distribute the existing copy, it allows users to direct others to view the original copy that Pryimachenko posted. To be sure, YouTube itself confirms that a posting a video does not allow other users to "make use of your Content independent of [YouTube]."[3] This is common sense, as an artist does not surrender their exclusive rights under 17 U.S.C. § 106 by posting their work on YouTube. Because Pryimachenko did not distribute *any* copies of the Subject Video to any "group of persons" for "further distribution or display," but only allowed others to view the copy he displayed on YouTube, there was no publication under the plain text of § 101.

**c.** **There was no transfer of any rights or intent to commercialize**

Pryimachenko's YouTube upload did not divest him of rights and was thus not publication. The "sin non qua of publication is the transfer of ownership rights in any given work; the number of people who view the work is irrelevant." *teamLab*, 650 F. Supp. 3d at 946, citing 17 U.S.C. § 101; Compendium § 1908 (2021) (citing H.R. Rep. No. 94-1476, at 138 (1976), reprinted in 1976 U.S.C.C.A.N. at 5675). Publication thus occurs when "copies of a work are distributed to the public without explicit or implicit restrictions" and "without regard to the manner in which the copies ... changed hands." Id., quoting Compendium § 1902 (2021) (citing H.R. Rep. No. 94-1476, at 138). Accordingly, displaying a work of art does not constitute publication unless accompanied by a public sale or offer of sale. *See* id.; 17 U.S.C. § 101; *see also American Vitagraph, Inc. v. Levy*, 659 F.2d 1023, 1026–27 (9th Cir. 1981) ("[P]ublication has been stated to be 'such a dissemination of the work of art itself among the public, as to justify the belief that it took place with the intention of rendering such work common property.'" (citation omitted)).

---

[3] See YouTube, *Terms of Service*, https://www.youtube.com/static?template=terms (last visited April 3, 2024).

"Uploading content to an internet site like YouTube is "neither a sale or transfer of ownership nor a distribution to others for further publication." *Philpot v. WOS, Inc*., 2019 WL 1767208, at *12 (W.D. Tex. 2019); *see also McLaren v. Chico's FAS, Inc.*, 2010 WL 4615772, at *4 (S.D.N.Y. 2010)(posting work on "website" did not suffice to plead "publication."), citing, e.g., *Einhorn v. Mergatroyd Prods.*, 426 F.Supp.2d 189, 197 n. 5 (S.D.N.Y.2006) ("merely posting a digital file" on the Internet was not "publication"). And YouTube's terms of service, even in 2013, imposed numerous restrictions and limitations on users' ability to access and share content subject to the approval of the rights holder. *See* Dkt. No. 28-4, ¶¶ 4-5.

Courts routinely hold that when an artist is not commercially offering their work for sale, there is no publication. *Dowdey v. Phoenix Films, Inc*., 1978 WL 951, at *6 (S.D.N.Y. 1978)(the "screening the film […] when she was unable to commercially offer the film for sale" was not publication). To be sure, "it has been long and consistently held that performance of a motion picture, for a noncommercial purpose, is not tantamount to publication[.]" Id. (citation omitted).

Indeed, even where there is a distribution or transfer of rights, it does not become publication for purposes of 17 U.S.C. § 411 without the critical "element of commercial exploitation." *Einhorn*, 426 F. Supp. 2d at 197. In *Einhorn*, the court found that posting a video on the internet was not publication because "making the work available in that way, even assuming it constituted "distribution," did not involve "sale or other transfer of ownership, or by rental, lease or lending" and "lack[ed] the element of commercial exploitation." Id. at 197.

Likewise, the court in *Feingold v. RageOn Inc.* confirmed that "critically, '[a] public … display of a work does not of itself constitute publication" where it "**lacks the element of commercial exploitation that defines publication**." 472 F. Supp. 3d 94, 99–100 (S.D.N.Y. 2020) (quoting *Einhorn*, 426 F. Supp. 2d at 197 n.45)(emphasis added). Indeed, "other courts

have recently acknowledged, publication requires "commercial exploitation," which is noticeably lacking when a digital file is merely posted online." *teamLab Inc.,* 650 F. Supp. 3d at 947, citing, e.g., *Feingold*, 472 F. Supp. 3d at 100; *Rogers*, 887 F. Supp. 2d at 730–31.

Just so here. Pryimachenko posted the Subject Video on YouTube as a public performance of the work, which is not publication. The allegations in the Complaint do not establish that posting the Subject Video to YouTube in 2013 divested Pryimachenko of any rights, nor that there was any element of commercial exploitation. Pryimachenko alleges that he first distributed the Subject Video commercially in 2016 when he offered and licensed it in Ukraine. His Complaint is sufficient.

### 2.    If there was publication, it was not simultaneous around the globe

To prevail, HBO must show that the face of the Complaint establishes both that the YouTube display was "publication," and that the publication was *simultaneous* around the world. 17 U.S.C. 101 (publication must be made "simultaneously in the United States and another treaty" country). They cannot do so because "as a matter of U.S. statutory law the [video was] not published simultaneously in the United States." *Moberg*, 666 F. Supp. 2d 415, 422 (D. Del. 2009). The publication was not simultaneous because such a conclusion would mean that a "copyright holder is subjected to the formalities of the copyright laws of every country which has such laws is contrary to the purpose of the Berne Convention." Id.

In addition, "the transformation of plaintiff's [works] into United States Works simply by posting them on the Internet would allow American citizens to infringe on foreign copyrighted works without fear of legal retribution[.]" *Moberg*, 666 F. Supp. 2d at 423. HBO urges this untenable conclusion. But "United States copyright laws, in accord with the Berne Convention, provide for protection of foreign works in the United States without requiring the artists to

undertake any formalities in the United States." Id. (citations omitted). Forcing all international artists to register their work with the U.S. Copyright Office when they post it online would conflict with Berne and result in farce. Pryimachenko's Complaint does not make clear that uploading of the Subject Video a simultaneous global publication.

### 3. Any publication was "limited" which would not require registration.

If there was publication, it was "limited," and the Subject Video still would be a non-U.S. Work. A limited publication occurs where "publication was (1) to a definitely select group, (2) for a limited purpose, and (3) without the right of diffusion, reproduction, distribution or sale." *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 288 F. Supp. 2d 544, 555 (S.D.N.Y. 2003) (citation omitted). Where only limited publication occurs, it "does not amount to publication as that term is defined in the Copyright Act." *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prod., Inc.*, 2020 WL 3000343, at *6 (S.D.N.Y. 2020). Posting to YouTube would be at most a limited publication because it is available only to a select group, for a limited purpose, and without any right of diffusion, distribution, reproduction, or sale. HBO admits that before the Subject Video's publication in Ukraine, the only semblance of a download available on YouTube was the "save videos offline" feature of something called "YouTube Red." Motion, pg. 7. Of course, there is no evidence that the Subject Video was part of "YouTube Red." Even if there were, this feature was, and still is, not available to the general public but only to the select group who pay for YouTube's premium service. *See Id.*; *see also* Dkt. No. 28-3. And these saved videos were only available for a limited purpose of personal viewing within the YouTube app for a limited time. *See* Dkt. No. 28-3. Finally, YouTube Red users expressly had no right to "copy, reproduce, distribute, transmit, broadcast, display, sell, license, or otherwise exploit," any saved video without obtaining additional rights and

permissions.[4] Because only a select group could save the Subject Video, for a limited purpose, and without any right to further exploit it, the Subject Video's posting on YouTube could not amount to anything more than a limited publication.

### 4. Defendants' evidence is irrelevant and inadmissible at this stage

On a motion to dismiss, courts "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202–03 (2d Cir. 2013). Here, HBO implores the Court to consider myriad extraneous materials including declarations, exhibits, and links to third-party webpages. But courts like *DeLuca v. AccessIT Grp* rejected similar reliance on extraneous material because it was not "incorporated by reference nor integral to the complaint and, therefore, w[ould] not be treated as part of the pleadings." 695 F. Supp. 2d 54, 61 (S.D.N.Y. 2010). The court further "decline[d] to convert the motion into one for summary judgment" because discovery had "not yet commenced." Id.

Just so here. HBO's extraneous materials were not incorporated by reference nor integral to the pleading and there has been no discovery. And judicial notice cannot cure the issue as courts should only take such notice "to determine what statements the documents contain not for the truth of the matters asserted." *In re AppHarvest Sec. Litig.*, 2023 WL 4866233, at *17 (S.D.N.Y. 2023)(citation omitted). Thus, even if the Court did take judicial notice, it could not rely on the truth of the statements therein to find that any of these YouTube features existed at the relevant times.

### C. Pryimachenko adequately pleads HBO's copyright infringement

---

[4] See Internet Archive of YouTube, *Terms and Conditions* from 2015, https://web.archive.org/web/20151225121602/https://www.youtube.com/t/terms (last visited April 4, 2024).

To withstand a motion to dismiss, Pryimachenko must show both (1) ownership of a valid copyright and (2) infringement of the copyright by defendant. *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018)(citation omitted). He does so.

### 1.    Pryimachenko pleads ownership of a valid copyright

A copyright is presumptively valid where the owner has registered the work and received a copyright registration for same. It is settled that "[a] certificate of copyright registration is *prima facie* evidence that the copyright is valid." *Folio Impressions, Inc. v. Byer Cal.*, 937 F.2d 759, 763 (2d Cir.1991). And Berne requires that copyrighted works registered in one signatory nation be afforded the same protection as those in the U.S, including recognizing the presumptive validity of a copyright registered in a signatory nation. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 886 F. Supp. 1120, 1126 (S.D.N.Y. 1995) ("If the papers have rights under Russian copyright law, then they are entitled to protection under United States copyright law."); *Living Media India Ltd. v. Parekh (Harshad)*, 1994 WL 68193, at *2 (S.D.N.Y. 1994) (Berne provides for "works copyrighted in a signatory foreign countries to be given copyright protection under United States law."). Pryimachenko's Complaint establishes this presumption. He alleges that he registered the Subject Video with the copyright office of Ukraine. Complaint ¶ 14. And he received a copyright registration. The presumption applies and has not been overcome.

Even without a registration, the Complaint establishes validity. The "validity of a copyright depends upon its originality." *Van Cleef & Arpels Logistics, S.A. v. Jewelry*, 547 F. Supp. 2d 356, 361 (S.D.N.Y.), adhered to on reconsideration sub nom. *Van Cleef & Arpels Logistics, S.A. v. Landau Jewelry*, 583 F. Supp. 2d 461 (S.D.N.Y. 2008). Originality in copyright "means only that the work was independently created by the author (as opposed to copied from

other works), and that it possesses at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 111 S. Ct. 1282, 1287–88, 113 L. Ed. 2d 358 (1991). The threshold for originality is "extremely low," such that the "vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." Id. at 345. The Subject Video is protectable.

In any event, originality is a case-by-case determination of "a factual issue that is inappropriate for determination on a motion to dismiss." *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 679 F. Supp. 2d 312, 320 (E.D.N.Y. 2010); *see also Nicholls v. Tufenkian Import/Export Ventures, Inc.*, 2004 WL 1399187, at *2 (S.D.N.Y. June 23, 2004) ("Defendants' argument that the 'Prado' design lacks originality raises factual issues that are best left for trial."). Here, Pryimachenko alleges that "[a]ll of the visual elements of the Subject Video are original and creative," and describes these elements. Complaint ¶ 11. This is sufficient.

### 2. Pryimachenko pleads infringement

To plead infringement, Pryimachenko must allege "substantial similarity" or that "the copying amounts to an improper or unlawful appropriation." *Edwards v. Raymond*, 22 F. Supp. 3d 293, 297 (S.D.N.Y. 2014)(citation omitted). He does so. Because direct evidence of actual copying is seldom available, a plaintiff may establish copying "by demonstrating that the person who composed the defendant's work had access to the copyrighted material," and that there are similarities between the two works that are "probative of copying[.]" *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999). And an infringer has access to a work where they have a reasonable opportunity to view the work. *See Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988).

Pryimachenko establishes both on the face of the Complaint. He alleges that each of the Defendants had a reasonable opportunity to access the Subject Video, "through viewing the [it]

on Pryimachenko's websites, social media accounts, and the internet" because "Pryimachenko widely publicly displayed and disseminated the Subject Video, including by posting same to his studio's YouTube channel on March 18, 2013, which currently has 8.7 million views." Complaint, ¶ 12, 25. He alleges HBO infringement via its "copying, reproducing, publicly displaying, distributing, and/or creating derivative works of the Subject Video in HBO and Sky's TV mini-series *Chernobyl* and in advertising and promotional videos for same." Complaint ¶ 15. And he alleges facts sufficient for probative similarity in the "virtually identical nature of the Subject Video" and HBO's copy, including illustrative screen captures. Id, ¶ 26, Exhibit 1.

**3.    The Complaint does not establish the Subject Video is not protectable**

HBO claims that Pryimachenko cannot plead infringement because not all individual elements of the Subject Video are original, but this is not the law. While HBO makes much of Pryimachenko's use of a historic phone call in the Subject Video, this has no impact on the originality of the work as a whole. It is settled that "[t]he entirety of a work need not be original to obtain copyright protection." *FragranceNet.com*, 679 F. Supp. 2d at 318. Indeed, "[t]he Copyright Act protects original and minimally creative selection of preexisting, unprotected materials (such as facts) for inclusion in a work, as well as original and creative arrangement of those materials." *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 674, 681 (2d Cir. 1998).

Pryimachenko does not claim ownership of the phone call depicted in the Subject Video, instead claiming only his visual content and the work's gestalt. Pryimachenko "created the visualization himself, choosing and creating the presentation" that was the sum of the creative selection and arrangement of numerous elements. Complaint ¶ 11. The use of a pre-existing phone call thus does not preclude protection for Pryimachenko's creative arrangement and selection of the elements in his work. Courts reject efforts to consider "only those elements that

alone are protectible," because it "would result in almost nothing being copyrightable because original works broken down into their composite parts would usually be little more than basic unprotectible elements like letters, colors and symbols." *Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 429 (S.D.N.Y. 2011), citing *Boisson v. Banian, Ltd*, 273 F.3d 262, 272 (2d Cir. 2001). This is just what HBO implores the Court to do. Thus, even if the individual elements such as font, color, arrangement of the text, and other aesthetic elements were not copyrightable alone, their creative selection and arrangement in the Subject Video is. HBO's motion fails.

**4.    The pleadings do not establish a lack of substantial similarity**

HBO further claims the individual elements HBO copied are not protectable, but this is not the law. When works incorporate both protectable and non-protectable elements, courts find substantial similarity by asking whether the "total concept and feel" of the works is substantially similar. *Knitwaves, Inc. v. Lollytogs Ltd.* (Inc.), 71 F.3d 996, 1004 (2d Cir. 1995). When applying this test, courts have repeatedly "disavowed any notion that '[they] are required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable.'" *Griffin v. Sheeran*, 351 F. Supp. 3d 492, 499 (SDNY 2019); *see also Boisson*, 273 F.3d at 272-73 (2d Cir. 2001). Instead, the court "compar[es] the contested [work's] total concept and overall feel with that of the allegedly infringed work, as instructed by [the Court's] good eyes and common sense." *Horizon Comics Prods., Inc. v. Marvel Ent., LLC*, 246 F. Supp. 3d 937, 941 (S.D.N.Y. 2017)(internal citations omitted). The ultimate test is thus "whether the alleged infringer has misappropriated "the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." *Knitwaves, Inc.*, 71 F.3d at 1004. Here, this reflects HBO's clear copying.

Indeed, a work "may be copyrightable even though it is entirely a compilation of unprotectible elements." *Knitwaves, Inc.*, 71 F.3d at 1003–04, citing *Feist*, 499 U.S. 340, 111 S. Ct.at 362. Even HBO's own authority only highlights that that this matter cannot be dismissed for lack of substantial similarity, as it shows that dismissal is only warranted where the plaintiff makes *no* creative contributions to the work. In *Earth Flag, Ltd. v. Alamo Flag Co.*, the work at issue was "nothing more than a public domain photograph transferred from the medium of paper to the medium of fabric," with no creative contributions by the plaintiff. 154 F. Supp. 2d 663, 667 (S.D.N.Y. 2001). And in *Torah Soft Ltd. v. Drosnin*, the work at issue was a reproduction of the text of the Torah with only "unoriginal changes" that were "functional, as opposed to creative" and dictated "by the end-users" rather than artistic choices by the plaintiff. 136 F. Supp. 2d 276, 287 (S.D.N.Y. 2001). Here, the only pre-existing element of Pryimachenko's Subject Video is the audio; all the visual elements are creative contributions made at his own artistic discretion.

5.      **The Subject Video enjoys broad copyright protection and HBO's copying was verbatim**

HBO claims that the Subject Video enjoys, if any at all, "thin" protection and that HBO's copy is not infringing because it is not verbatim. But this is unavailing because the Subject Video enjoys broad protection and HBO's copying is verbatim. The doctrine of "thin copyright protection" applies to works that are protectable but contain only "scant creativity." *SMS Grp. Inc. v. Pharmaaid Corp.*, 2023 WL 6929653, at *4 (E.D.N.Y. 2023). Courts generally only find such scant creativity when a work is almost entirely dictated by preexisting elements, such as a product photo of a pre-existing Skyy vodka bottle. *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763,

766 (9th Cir. 2003). Here, the *only* pre-existing element of the Subject Video was the audio. All visual elements and the selection and arrangement of elements were original.

And even if the Subject Video were only protected against "very close" copying, HBO's motion still fails because its infringement is verbatim. *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996). A comparison of the two works reveals they are nearly identical, featuring the same appearance of the text, in the same font and color, on the same kind of computer terminal screen, with the same burn-in effect, and the same horrific effect, none of which are inherent to the audio. *See* Complaint, Exhibit 1.

And while HBO tries to dispel this obvious similarity with alleged minor differences such as the "roundness" of the font and the zoom on the screen, this fails. Courts regularly find that such insignificant differences "only tend[] to emphasize the extent to which the defendant has deliberately copied from the plaintiff." *Klauber Bros., Inc. v. Jenny Yoo Collection, Inc.*, No. 16 CIV. 9260 (LLS), 2017 WL 4082483, at *6 (S.D.N.Y. July 18, 2017), citing *Concord Fabrics, Inc. v. Marcus Bros. Textile Corp.*, 409 F.2d 1315, 1316 (2d Cir. 1969. Even if minor differences existed, HBO's copying is still at least "very close" to the Subject Video. The motion fails.

### D.    Pryimachenko sufficiently states a claim under 17 U.S.C. § 1202(b)

The Digital Millennium Copyright Act ("DMCA") prohibits the "removal or alteration" of "copyright management information" ("CMI"). 17 U.S.C. § 1202(b). It prohibits both the *intentional* removal of CMI, and the distribution of copyrighted material with *knowledge* that its CMI had been altered or removed. § 1202(b)(2-3). CMI includes "the title or identifying information of the work, author or copyright owner, the terms and conditions of use of the work, and identifying numbers or symbols referring to such information." *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 723 F. Supp. 2d at 609 (S.D.N.Y. 2010). To state a claim

under § 1202 (b), a plaintiff need only allege: (1) the existence of CMI in connection with the plaintiff's work; (2) removal and/or alteration of that information; and (3) that the removal and/or alternation was done intentionally. *See BanxCorp*, 723 F. Supp. 2d at 609.

Pryimachenko alleges that the Subject Video contained CMI and that HBO "removed Pryimachenko's copyright management information…from the Subject Video." Complaint, ¶ 37. Pryimachenko also provides examples of the Subject Video containing his CMI. Id, ¶¶ 10, 36. And he alleges that HBO removed this CMI from its infringing use and evidences this removal with screenshots of the copy in *Chernobyl* without same. Id. ¶ 37, Exhibit 1. This is sufficient to allege he publicly displayed the Subject Video with CMI, and that HBO removed this CMI before distributing its infringing copy. Complaint ¶ 10, 36, Exhibit 1. *See BanxCorp*., 723 F. Supp. 2d at 610 ("Providing an actual example of the allegedly infringing [work] is obviously more than a conclusory allegation.").

### E.  Pryimachenko state a claim under § 1202(a)

§ 1202(a) states that "no person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement – (1) provide copyright management information that is false, or (2) distribute…copyright management information that is false." 17 U.S.C. § 1202(a). To state a claim, a plaintiff need only plausibly allege that defendant knowingly provided false copyright information with the intent to induce, enable, facilitate, or conceal an infringement. Id. And the Second Circuit "requires district courts to be lenient in allowing scienter issues to survive motions to dismiss 'because such issues are appropriate for resolution by the trier of fact.'" *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2nd Cir. 2009).

Pryimachenko alleges HBO knew he owned the copyright in the Subject Video because it was "routinely published with attribution, credit, and other copyright management information

identifying Pryimachenko as the author." Complaint ¶¶, 36, 41. And HBO "distributed and published the Subject Video via its mini-series Chernobyl and promotional materials, under HBO's own name, and removing Pryimachenko's attribution information." Complaint ¶ 38. This is sufficient to state that HBO's actions were intended either to "induce, enable, facilitate, or conceal" infringement." *Penske Media Corp. v. Shutterstock, Inc*., 548 F. Supp. 3d 370, 382 (S.D.N.Y. 2021).

### F.     Pryimachenko properly pleads Scienter

HBO claims that Pryimachenko fails to plead scienter because he does not allege "any facts to support" the claim, but this is false as he pleads facts generally establishing scienter. Motion, pg. 21. His claims suffice because "intent and knowledge [can] be alleged generally," and courts must be lenient in reviewing scienter allegations." *Grecco v. Alamy*, 372 F. Supp. 3d at 139 (citations omitted). And generally pleading that the defendant continued infringing after receiving notice is sufficient for scienter under § 1202. *See Aaberg v. Francesca's Collections, Inc.*, 2018 WL 1583037, at *9 (S.D.N.Y. Mar. 27, 2018)("Here, the SAC alleges that certain Plaintiffs contacted Francesca's with complaints of infringement, and that Francesca's continued to sell infringing products nonetheless...Similar allegations were sufficient to establish the knowledge element of the DMCA claims in other cases.")(collecting cases).

Here, Pryimachenko alleges he "repeatedly notified Defendants that their exploitation of the Subject Video infringes upon his exclusive rights under Copyright," yet HBO continued copying the video without his CMI. Complaint ¶ 22. Pryimachenko sufficiently pleads scienter.

### G.     HBO's use of its own name and branding is false CMI

HBO further claims that adding its CMI to copies of the Subject Video was not distribution of false CMI because *Chernobyl* as a whole is distinct from the Subject Video, but

this is unavailing because merely displaying its infringing copy with the other parts of *Chernobyl* does not mean HBO could accurately indicate it had rights to the Subject Video.

Even where a copied work is displayed among, or even incorporated into, creations of the infringer, CMI indicating ownership of all the content is false. In *Fischer v. Forrest*, the plaintiff adequately alleged distribution of false CMI where the defendant incorporated plaintiff's photograph and text into a new website alongside other content original. 2015 WL 195822, at *8 (S.D.N.Y. 2015). Here, Pryimachenko alleges that HBO distributed an effectively verbatim copy of his work alongside other footage with CMI falsely indicating HBO's ownership of all content therein. Complaint ¶¶ 35-43. Just as in *Fischer*, this is sufficient to state a claim under 1202(a).

And HBO's authority here is easily distinguished. In *Crowley* and *Park*, the works at issue were "unquestionably distinct." *See Park v. Skidmore, Owings & Merrill LLP*, 2019 WL 9228987, at *11 (S.D.N.Y. 2019); *see also Crowley v. Jones*, 608 F. Supp. 3d 78, 91 (S.D.N.Y. 2022). However, the court in *ADR Int'l* found that where plaintiff's allegations included "side-by-side comparisons" and the defendant's infringing copy did not appear to be "unquestionably distinct," *Park* was inapplicable. *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d 411, 428 (S.D. Tex. 2023)(citation omitted).

Pryimachenko here provides side-by-side comparisons of the Subject Video and HBO's copy that make clear the copy is near verbatim or at minimum not "unquestionably distinct" from Pryimachenko's work. It therefore cannot be determined from the pleadings that HBO's did not distribute false CMI with its infringing copies of the Subject Video.

**H.    Violations of 1202(a) are not limited to identical copies of a plaintiff's work**

HBO claims it did not violate § 1202 because the DMCA "requires that the defendant make an identical copy of the plaintiff's work with the CMI removed.," and "*Chernobyl* did not

reproduce the [Subject Video] verbatim," but this is not the law. Motion, pg. 22. Nothing in §

1202 mandates that removal, alteration, or falsification of CMI must occur in an identical work

for a plaintiff to obtain relief. Such a requirement would inure as it would mean any infringer

could make an immaterial change to a copy and freely affirm that they own it. This is what HBO

has done. And courts reject such claims. *See Fischer* at 609 (CMI removal found where a work

has been "substantially <u>or</u> entirely reproduced," not only in identical copies.)(emphasis added),

citing *Bounce Exch., Inc. v. Zeus Enter. Ltd.*, 2015 WL 8579023, at *1 (S.D.N.Y. 2015).

And HBO's only authority that actually stands for this proposition, *Kirk Kara*, has been

heavily scrutinized.[5] The court in *ADR Int'l* expressly rejected the reasoning in *Kirk Kara* as

because "[a]lthough the court in *Kirk Kara* held the DMCA requires identical copies, the caselaw

it cited does not support its holding." *ADR Int'l*, 667 F. Supp. 3d at 427. The motion fails.

## I.     The statute of limitations should be tolled and does not apply to all claims

The statute of limitations for Pryimachenko's claims should be equitably tolled due to the

ongoing invasion and war in Ukraine. Contrary to HBO's claims, equitable tolling is appropriate

in "exceptional circumstances, in which a party is prevented in some extraordinary way from

exercising [their] rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d

Cir. 2003) (internal quotation marks and citations omitted). A plaintiff may be entitled to

equitable tolling when they can "demonstrate a causal relationship between the extraordinary

circumstances on which the equitable tolling rests and the lateness of [the filing]." *Valverde v.

Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

---

[5] HBO also cites to *Temblay v. OpenAI, Inc.*, but nowhere in this decision does the court impose an identicality requirement. 2024 WL 557720 (N.D. Cal. 2024).

Courts have found war such an extraordinary circumstance. *See Hanger v. Abbott*, 73 U.S. 6 Wall. 532, 18 L.Ed. 939 (1867) (equitably tolling the limitations period where plaintiff was unable to file suit because southern courts were closed during the Civil War); *Osbourne v. United States*, 164 F.2d 767 (2d Cir. 1947) (equitably tolling the limitations period where plaintiff was unable to sue because he was held as prisoner of war.) Pryimachenko, an independent artist living in a country actively at war, should be allowed to toll the statute.

Even without tolling, Pryimachenko can recover for infringement occurring within three years of filing this suit, including HBO's continued exploitation of the Subject Video in *Chernobyl*. *See Petrella v. Metro-Goldwyn-Mayer, Inc.,* 572 U.S. 663, 671–72, 134 S. Ct. 1962, 1969–70, 188 L. Ed. 2d 979 (2014)("Each time an infringing work is reproduced or distributed, the infringer commits a new wrong.")

## IV.     LEAVE TO AMEND SHOULD BE GRANTED

Should this Court determine that Pryimachenko's pleadings are deficient, he respectfully requests leave to amend his Complaint per the "liberal" standard of Fed. R. Civ. P. 15. "[W]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (citations and quotations omitted). Courts often allow amendments for efficiency and to avoid multiple actions. *Philips N. America LLC v. KPI Healthcare, Inc.*, 2020 WL 3032765, at *3 (C.D. Cal. 2020). Pryimachenko could register his work and amend, preventing the need to refile post-registration.

## V.     THIS MOTION SHOULD BE DENIED

Pryimachenko has adequately pled his claims, it is respectfully submitted that Defendant's Motion be denied, or in the alternative that Pryimachenko be given leave to amend any perceived deficiencies in his pleadings.

Respectfully submitted,

Dated: April 5, 2024          By:   */s/ Scott Alan Burroughs*
New York, New York                  Scott Alan Burroughs, Esq.
                                    David M.S. Jenkins, Esq.
                                    DONIGER / BURROUGHS
                                    247 Water Street, First Floor
                                    New York, New York 10038
                                    scott@donigerlawfirm.com
                                    djenkins@donigerlawfirm.com
                                    (310) 590-1820
                                    Attorneys for Plaintiff