UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------------------x
Andrii Pryimachenko, an individual, :
: Case No. 1:23-cv-10034-LAK-RWL
                  Plaintiff, :
:
     - against - :
:
Home Box Office, Inc., a Delaware corporation; :
Sky UK Limited, a United Kingdom limited :
company; and DOES 1-10, :
:
                  Defendants. x
------------------------------------------------------------------------

# REPLY MEMORANDUM OF LAW IN SUPPORT OF HBO'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

## **TABLE OF CONTENTS**

**Page**

I.    ARGUMENT ................................................................................................................. 1

        A.    Plaintiff Is Not Exempt from the Copyright Act's Registration Requirement ....... 1

        B.    Plaintiff Does Not Allege HBO Copied Protectable Elements of the Video .......... 6

        C.    Plaintiff Fails to State a Claim for DMCA Violations ............................................ 8

        D.    The Statute of Limitations Is Not Tolled ............................................................... 10

II.    CONCLUSION ........................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 2

*Bagdadi v. Nazar*,
  84 F.3d 1194 (9th Cir. 1996) .................................................................................................... 4

*Brunson v. Cook*,
  2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023) ...................................................................... 4

*Chiykowski v. Goldner*,
  2020 WL 2834225 (S.D.N.Y. May 31, 2020) .......................................................................... 2

*DeLuca v. AccessIT Group*,
  695 F. Supp. 2d 54 (S.D.N.Y. 2010) ........................................................................................ 6

*DigitAlb, Sh.a v. Setplex, LLC*,
  284 F. Supp. 3d 547 (S.D.N.Y. 2018) ................................................................................... 2, 3

*Doe 1 v. GitHub, Inc.*,
  2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ............................................................................. 9

*Einhorn v. Mergatroyd Prods.*,
  426 F. Supp. 2d 189 (S.D.N.Y. 2006) ...................................................................................... 6

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.*,
  756 F. Supp. 2d 1352 (N.D. Fla. 2010) .................................................................................. 10

*Feingold v. RageOn Inc.*,
  472 F. Supp. 3d 94 (S.D.N.Y. 2020) ........................................................................................ 6

*Fischer v. Forrest*,
  2015 WL 195822 (S.D.N.Y. Jan. 13, 2015) ............................................................................. 9

*Fischer v. Forrest*,
  286 F. Supp. 3d 590 (S.D.N.Y. 2018), *aff'd*, 968 F.3d 216 (2d Cir. 2020) ............................ 10

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
  2014 WL 5798282 (D. Haw. Nov. 7, 2014), *aff'd*, 700 F. App'x 674 (9th Cir. 2017) ........... 10

*Kernal Records Oy v. Mosley*,
  794 F. Supp. 2d 1355 (S.D. Fla. 2011), *aff'd*, 694 F.3d 1294 (11th Cir. 2012) ....................... 4

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
   2020 WL 5991503 (C.D. Cal. Aug. 14, 2020)..................................................................9

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
   71 F.3d 996 (2d Cir. 1995)..............................................................................................7

*Mena v. Fox Ent. Grp.*,
   2012 WL 4741389 (S.D.N.Y. Sept. 29, 2012).................................................................7

*Michael Greco Prods., Inc. v. Time USA, LLC*,
   2021 WL 3192543 (S.D.N.Y. July 27, 2021) .................................................................9

*Moberg v. 33T LLC*,
   666 F. Supp. 2d 415 (D. Del. 2009)................................................................................4

*O'Neal v. Sideshow, Inc.*,
   583 F. Supp. 3d 1282 (C.D. Cal. 2022) ........................................................................10

*Philpot v. WOS, Inc.*,
   2019 WL 1767208 (W.D. Tex. Apr. 22, 2019)................................................................5

*Tremblay v. OpenAI, Inc.*,
   2024 WL 557720 (N.D. Cal. Feb. 12, 2024) ................................................................10

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
   338 F.3d 127 (2d Cir. 2003)............................................................................................7

*UAB "Planner 5D" v. Facebook*,
   2019 6219223 (N.D. Cal. Nov. 21, 2019)...................................................................3, 4

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*,
   210 F. Supp. 2d 147 (E.D.N.Y. 2002) ............................................................................7

*Whyte Monkee Prods., LLC v. Netflix, Inc.*,
   97 F.4th 699 (10th Cir. 2024) .........................................................................................4

*Zalewski v. Cicero Builder Dev., Inc.*,
   754 F.3d 95 (2d Cir. 2014)..............................................................................................8

**Federal Statutes**

17 U.S.C.

   § 101................................................................................................................................4, 6

   § 1202.............................................................................................................................8, 9

iii

**Other Authorities**

Compendium of U.S. Copyright Office Practices § 1008.3(B) ...................................................3, 5

1 NIMMER ON COPYRIGHT § 4.11[A] (2024) ...................................................................................6

2 NIMMER ON COPYRIGHT § 7.16 (2024) ........................................................................................4

Plaintiff's opposition (Dkt. No. 31) ("Opposition" or "Opp.") is most notable for what it does not dispute. It does not contest, for example, that the Amended Complaint[1] fails to provide sufficient information to assess when and where the Video was *first* distributed, as required to determine if it is exempt from the Copyright Act's registration requirement. Rather, Plaintiff argues that this Court should focus only on a 2016 license in Ukraine – years after Plaintiff had already distributed his work – and deem that license to be the "first publication" of the Video. Opp. at 11. This conclusory allegation does not satisfy Plaintiff's burden of establishing that his Video is a foreign work exempt from the Copyright Act's registration requirement. For this reason alone, Plaintiff's copyright claims must be dismissed.

The Opposition also makes no more than a token effort to challenge HBO's argument that the *protectable* elements in each of the *Chernobyl* Episode and the Video are not substantially similar. Rather, the Opposition focuses on the assertion that the Video is original enough to warrant copyright protection. But that is an issue HBO does not contest on this motion. The issue is that, given the admittedly nominal originality in the Video, Plaintiff cannot establish that the *protectable* elements of the two works here are substantially similar.

Plaintiff has now attempted twice to state a claim against HBO and has failed to do so. This Court should not grant him a third opportunity and should dismiss his claims with prejudice.[2]

**I.  ARGUMENT**

    **A.  Plaintiff Is Not Exempt from the Copyright Act's Registration Requirement**

Plaintiff concedes he has not registered the Video in the United States. AC ¶ 13. He also acknowledges that to survive a motion to dismiss, he must allege the Video was first published

---

[1] Capitalized terms have the same definition as in the Memorandum of Law in Support of HBO's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 27) ("MTD Mem.").
[2] Plaintiff suggests that if HBO's motion to dismiss is successful, he should be permitted to register the Video and then amend his complaint. Opp. at 24. But lack of registration is not a deficiency that be cured by a post-registration amendment. MTD Mem. at 8 n.7.

abroad. *Id.* But in the Opposition, Plaintiff attempts to reverse the burden of proof and claim he need not detail when and how he first distributed his Video. This tactic cannot save his claims.

***First***, and to be clear: a plaintiff who sues for copyright infringement bears the burden of pleading the allegedly infringed work is registered, or exempt from registration. *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 555 (S.D.N.Y. 2018). As with any element of a claim, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A "legal conclusion couched as a factual allegation" – like Plaintiff's claim that "[t]he Subject Video was first published abroad in Ukraine" (AC ¶ 13) – is entitled to no weight. *Id.*

Plaintiff attempts to flip this burden, arguing that "there is no requirement that [plaintiffs] allege when or where they first published the work" in order to establish exemption from the registration requirement. Opp. at 4, 11. Plaintiff is wrong, and the one case he cites for this proposition says nothing of the sort. *See Chiykowski v. Goldner*, 2020 WL 2834225, at *2 (S.D.N.Y. May 31, 2020). To the contrary, courts dismiss copyright claims where the plaintiff's work was not registered in the U.S., and the plaintiff "d[id] not identify where or when the [work] was <u>first</u> published." *See*, *e.g.*, *DigitAlb*, 284 F. Supp. 3d at 555.

***Second***, Plaintiff's refusal to detail how he "widely publicly displayed and disseminated" the Video prior to its alleged first publication in Ukraine (AC ¶ 12) cannot save him from the registration requirement. Plaintiff asks this Court to accept his conclusion that, although he had been distributing it for years, his Video was first published when it "was first publicly offered for sale or license in Ukraine in 2016 to [PJSC]." AC ¶ 13. That is not the law.

Plaintiff's argument simply ignores the law that "publication" is not limited to offering a work for sale or license. MTD Mem. at 5-7. For example, the Copyright Office makes clear that

2

distributing a work online in a matter that authorizes further reproduction or distribution of that work is sufficient to establish "publication." Compendium of U.S. Copyright Office Practices ("Compendium") § 1008.3(B). Thus, alleging the time and place of a work first being offered for licensing or sale alone, as Plaintiff does here, does not answer the question of where the work was first published. And, for this reason, as in *DigitAlb*, this Court should not allow this case to go forward due to Plaintiff's omission of key information about how and where he widely distributed this work for the three years before he licensed it for sale in the Ukraine. *See* MTD Mem. at 9-10.

*UAB "Planner 5D" v. Facebook, Inc.* is particularly instructive on this point. There, the plaintiff argued its works were unpublished and were authored by foreign persons, and therefore were not United States works that had to be registered prior to suing for infringement. 2019 WL 6219223, at *6-7 (N.D. Cal. Nov. 21, 2019). Plaintiff supported this argument by alleging that, while the works were displayed on its website, access to them was restricted such that their availability over the internet did not constitute publication. *Id.* at *7. The court dismissed the claim, finding plaintiff's allegations were not sufficiently detailed for the court to determine whether distribution of the works online constituted publication rather than mere display. *Id.* The same is true here: Plaintiff's claim that the Video is a foreign work depends on the assertion that the 2016 transaction was the first publication, and the earlier distribution of the Video did not amount to publication. But as in *UAB Planner*, the Amended Complaint does not allege sufficient facts to allow the Court to determine whether that is the case.

The Opposition argues that *DigitAlb* and *UAB Planner* are distinguishable because "[i]n those cases, the plaintiffs failed to make *any* allegation that the works at issue were not U.S. Works." Opp. at 4. That is inaccurate. In *DigitAlb*, the plaintiff alleged its works were not U.S. works because it "published th[em] outside of the United States." 284 F. Supp. 3d at 555. And in

3

*UAB Planner*, the plaintiff claimed its works were "unpublished," because the works on its website were "strictly limited" by both its terms of service and the website's structure. 2019 WL 6219223, at *7. In both cases, the claims were insufficient to survive a motion to dismiss because, like Plaintiff here, the plaintiffs failed to allege sufficient information for the court to determine if the plaintiffs were exempt from the registration requirement.

***Third***, and independently, Plaintiff's own factual allegations establish the Video was published, at latest, in 2013 when Plaintiff uploaded it to YouTube. *See* MTD Mem. at 6-7. This 2013 publication was a U.S. one as it was distributed simultaneously across the world. MTD Mem. at 8.[3] As HBO explained, Plaintiff satisfied the definition of publication by providing the Video to YouTube for further distribution to YouTube users. MTD Mem. at 7; *see* 17 U.S.C. § 101 (publication includes "offering to distribute copies . . . to a group of persons for purposes of further distribution . . .").[4] Making the Video available on YouTube also constituted publication by virtue of users' ability both to distribute the Video and download it. *See* MTD Mem. at 6-7. Indeed, the Court of Appeals for the Tenth Circuit recently joined the chorus of decisions applying the Compendium's guidance to find that distribution of works on YouTube constitutes publication. *See Whyte Monkee Prods., LLC v. Netflix, Inc.*, 97 F.4th 699, 717-18 (10th Cir. 2024). Conversely,

---

[3] Plaintiff claims publication via YouTube was not simultaneous around the world and thus did not make the Video a U.S. work. Opp. at 11-12 (citing *Moberg v. 33T LLC*, 666 F. Supp. 2d 415 (D. Del. 2009)). *Moberg*'s reasoning has been strongly criticized as having no basis in the Copyright Act (*see*, *e.g.*, *Kernal Records Oy v. Mosley*, 794 F. Supp. 2d 1355, 1367 (S.D. Fla. 2011), *aff'd*, 694 F.3d 1294 (11th Cir. 2012); 2 NIMMER ON COPYRIGHT § 7.16 (2024)), and in any event does not support Plaintiff's argument – *Moberg* found first publication abroad on the basis that plaintiff's work had been published on a *German* website, in contrast to YouTube, which is an American site. *See Moberg*, 666 F. Supp. 2d at 423-24. Moreover, it is not HBO's burden to establish the Video is a U.S. work. *See supra* at 2.

[4] Plaintiff contends that offering the Video to YouTube for further distribution fails to meet the statutory definition of publication because YouTube is not a "group of persons." Opp. at 7-8. Not so: "a single entity comprised of multiple people" – like YouTube – "constitutes a 'group of persons' within the meaning of [this provision of the Copyright Act]." *Bagdadi v. Nazar*, 84 F.3d 1194, 1198-99 (9th Cir. 1996). The passage of *Brunson v. Cook* Plaintiff cites (Opp. at 8) is not to the contrary. *See* 2023 WL 2668498, at *9 (M.D. Tenn. Mar. 28, 2023) (noting dicta from another case that distribution to a single *individual* was "likely insufficient" to qualify as distribution to a "group of persons").

4

HBO is aware of no decisions – and Plaintiff cites none[5] – in which a court declined to find distribution on YouTube constituted publication.

Instead, Plaintiff attempts to cobble together disparate principles, derived largely from pre-internet cases, to argue the Video's availability on YouTube did not qualify as publication. For example, Plaintiff argues that publication requires distribution of copies of the work, and that no copies were distributed to YouTube users. Opp. at 6-7. The Opposition also claims that publication requires a transfer of ownership rights, which Plaintiff maintains has not occurred here. Opp. at 9-10. But the Compendium explains that both requirements – distribution of copies and transfer of ownership rights – are satisfied when the author distributes a work online in a way that *authorizes* others to distribute or reproduce it. *See* Compendium § 1008.3(B).

Similarly, Plaintiff argues that merely displaying a work online does not constitute publication. Opp. at 10. But that is not all that occurred here: Plaintiff displayed the Video online *and* authorized YouTube users to distribute and reproduce it via the "Share" button, and download it as a benefit of certain premium YouTube services. *See* MTD Mem. at 6-7. And while Plaintiff quibbles with the status of these functions in 2013,[6] the YouTube terms of service in effect in 2013 make explicit that by uploading the Video, Plaintiff authorized other users to reproduce and distribute it. *See* Mazurek Decl. Ex. 4 § 6.C (2013 terms of service stating that "by submitting Content to YouTube . . . [y]ou also hereby grant each user of the Service a non-exclusive license to . . . use, **reproduce, distribute**, display and perform such Content.") (emphasis added).[7]

---

[5] Plaintiff quotes *Philpot v. WOS, Inc.*, 2019 WL 1767208, at *12 (W.D. Tex. Apr. 22, 2019) as stating that "[u]ploading content to an internet site like YouTube is **'neither a sale or transfer of ownership nor a distribution to others for further publication.'**" Opp. at 10. But only the bolded language appears in *Philpot*, which does not mention YouTube.

[6] *See* Opp. at 4 (speculating the share button "may have existed in a different format"). And Plaintiff's contention the download function did not exist in 2013 (*id.*) is irrelevant – the question is whether Plaintiff published the work before offering it to PJSC in 2016, and the ability to download videos existed at least by 2015. *See* MTD Mem. 7 n.5.

[7] The Opposition argues that on a motion to dismiss, the Court may not consider the "declarations, exhibits, and links to third-party webpages" that HBO referenced. Opp. at 13. While that may true in some cases, the materials here are

5

Finally, Plaintiff is incorrect that publication cannot occur absent commercial exploitation. That requirement is not found in the statutory definition of publication (*see* 17 U.S.C. § 101), and conflicts with the Copyright Office's guidance and case law outlined above. *See also* 1 NIMMER ON COPYRIGHT § 4.11[A] (2024) ("The proposition [that commercial exploitation is necessary to publication] should . . . not be taken as established law," since it fails to account for publication accomplished by uploading a work to the internet with authorization for it to be distributed or reproduced) (discussing *Einhorn v. Mergatroyd Prods.*, 426 F. Supp. 2d 189 (S.D.N.Y. 2006), and *Feingold v. RageOn Inc.*, 472 F. Supp. 3d 94 (S.D.N.Y. 2020)).

Thus, Plaintiff has failed to meet his burden of establishing his Video is exempt from registration, and his infringement claims must be dismissed.

### B. Plaintiff Does Not Allege HBO Copied Protectable Elements of the Video

As HBO explained, the Amended Complaint fails to plead HBO infringed the Video because there is no substantial similarity between the *Chernobyl* Episode and protected aspects of the Video. *See* MTD Mem. at 10-20. On this issue, the Opposition has little to say. Instead, Plaintiff largely argues that the Video is sufficiently original to be copyrightable – an issue HBO did not raise in its motion. *See*, *e.g.*, Opp. at 14-15, 16-17, 18.

When it comes to substantial similarity, Plaintiff agrees that he has no claim to ownership of the Phone Call. Opp. at 16. That is a historical work that neither party owns. Plaintiff also does not claim to own the words that appear on the screen – because he did not come up with them – or that any of the Video's visual elements is individually protectable. He claims instead that "even if the individual elements . . . were not copyrightable alone," *Chernobyl* copied the Video's

---

simply various versions and portions of YouTube's terms of service, which courts may consider on motions to dismiss to determine the features of a service. *See* MTD Mem. at 7 n.4. Plaintiff offers no response to the cases cited by HBO, and the lone case cited in the Opposition is not to the contrary  *See DeLuca v. AccessIT Group*, 695 F. Supp. 2d 54, 61 (S.D.N.Y. 2010) (declining to consider private correspondence attached to a motion to dismiss).

selection and arrangement.  *See* Opp. at 17-19.  But it is here that the Opposition makes leaps in law and fact that cannot be supported.

For starters, the Opposition ignores that "substantial similarity exists" only "between the defendant's work and the *protectible* elements of plaintiff's."  *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (emphasis added) (citation omitted).  And while this Court should look to the "total concept and feel" of the two works, that "inquiry … is not carte blanche to rest findings of infringement on vague or amorphous determinations," which "would 'invite[] an abdication of analysis' or 'end up erroneously protecting ideas.'"  *Mena v. Fox Ent. Grp.*, 2012 WL 4741389, at *6 (S.D.N.Y. Sept. 29, 2012) (quoting *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2d Cir. 2003)).  When analyzing claims based on selection and arrangement, courts must "take[] care to identify precisely the particular aesthetic decisions—original to the plaintiff and copied by the defendant—that might be thought to make the [works] similar in the aggregate."  *Tufenkian*, 338 F.3d at 134.

By the same token, Plaintiff claims that because his Video meets the "extremely low" originality threshold necessary for copyrightability (Opp. at 14-15), it merits "broad copyright protection."  Opp. at 18.  That is not true.  Instead, courts regularly find works are entitled only to thin protection when they consist mostly or entirely of unprotectable elements, regardless of whether such elements are "preexisting."  *See*, *e.g.*, *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp. 2d 147, 163-72 (E.D.N.Y. 2002) (copyright protection is thin where "the author has chosen to express an idea without much embellishment, so that the expression is nearly indistinguishable from the idea itself").  That is the case here.  Plaintiff had an idea to take a pre-existing phone call and put a transcript of that call on a computer display typical of the era.  Plaintiff

7

did not create the call, the words, or the font – and he expressed his idea "without much embellishment." His Video is therefore entitled to the thinnest of protection, if any.

Plaintiff claims that the differences in the works – such as the different font used, the placement of the transcript on the computer screen, and the look of that computer screen – are minor differences. Opp. at 19. But those choices relate to the only original creative elements in Plaintiff's work, so the fact they are different takes on an outsized importance here. *See* MTD Mem. at 19; *see also Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 102-106 (2d Cir. 2014) (where copyright was very thin, minor differences were significant to substantial similarity analysis). Indeed, the Opposition is unable to identify any aesthetic decisions Plaintiff claims to be original that were copied by HBO. Instead, faced with the fact that he does not own the call, the words of that call, or the idea of putting those words in a 1980s-style computer display, Plaintiff relies on precisely the kinds of conclusory assertions regarding selection and arrangement that courts have warned against on the basis that they invite an abdication of analysis. *See*, *e.g.*, Opp. at 16 (claiming protection of the work's "gestalt"). The protectable elements of the works are not substantially similar and Plaintiff's Amended Complaint should be dismissed in its entirety.

    **C.**    **Plaintiff Fails to State a Claim for DMCA Violations**

Plaintiff does not dispute that if the Court finds he failed to plead infringement, his DMCA claims must be dismissed as well. But even if the Amended Complaint adequately pled infringement, Plaintiff's DMCA claims would still fail.

*First*, a claim for provision of false CMI under 17 U.S.C. § 1202(a) is not available where a defendant allegedly incorporated the plaintiff's work into its own, different work, and attached its name to the distinct work. *See* MTD Mem. at 21-22. For example, a defendant did not provide false CMI by attaching its own copyright notice to magazine covers that included the plaintiff's photographs because the defendant's CMI "identif[ied] rights with respect to the Covers — not

8

the Photographs, which are just one element of the Covers." *Michael Greco Prods., Inc. v. Time USA, LLC*, 2021 WL 3192543, at *5 (S.D.N.Y. July 27, 2021). The same is true here: the allegedly false CMI identifies HBO's rights in *Chernobyl*, not in the Video, and is not false.

Plaintiff cites to *Fischer v. Forrest*, 2015 WL 195822 (S.D.N.Y. Jan. 13, 2015), claiming that the court allowed a false CMI claim to go forward "where the defendant incorporated plaintiff's photograph and text into a new website alongside other content original." Opp. at 22. But in *Fischer*, there was no suggestion that the defendant's website was itself a separate work that "incorporated" plaintiff's photograph, or that the defendant distributed false CMI by claiming copyright over its site as a whole. Rather, the website simply displayed the work at issue with plaintiff's CMI replaced by defendant's. 2015 WL 195822 at *8. That is not the case here.

Nor can Plaintiff distinguish HBO's authority on the basis that defendants' works in those cases were "unquestionably distinct" from plaintiffs'. Opp. at 22. The *Chernobyl* Episode is a full-length episode of a television series that is "unquestionably distinct" from Plaintiff's Video. As a result, even if it incorporated verbatim portions of the Video (which it did not), no claim for false CMI would lie. *See*, *e.g.*, *Michael Greco*, 2021 WL 3192543 at *5 (dismissing false CMI claim where defendant affixed CMI to cover that incorporated exact copy of plaintiff's work).

***Second***, a claim for removal of CMI under 17 U.S.C. § 1202(b) is available only where the defendant has reproduced plaintiff's work exactly. *See* MTD Mem. at 22. Plaintiff counters that "the only authority that actually stands for this proposition, *Kirk Kara* [*Corp. v. W. Stone & Metal Corp.*, 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020)], has been heavily scrutinized," citing a single out-of-circuit district court case that declined to follow *Kirk Kara*. Opp. at 23 (citing *ADR Int'l Ltd. v. Inst. for Supply Mgmt. Inc.*, 667 F. Supp. 3d 411 (S.D. Tex. 2023)). *Kirk Kara*, however, does not stand alone. *See, e.g.*, *Doe 1 v. GitHub, Inc.*, 2024 WL 235217, at *9 (N.D.

9

Cal. Jan. 22, 2024) ("[N]o DMCA violation exists where the works are not identical.") (quoting *Advanta-STAR Auto. Res. Corp. of Am. v. Seach Optics, LLC*, 672 F. Supp. 3d 1035, 1057 (S.D. Cal. 2023)); *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1287 (C.D. Cal. 2022) (same).

Plaintiff fares no better with the argument that his claim for removal of CMI is viable because such a claim requires only that his work have been "substantially . . . reproduced." Opp. at 23. The case the Opposition cites actually confirms that no claim for removal of CMI is available where the defendant merely *bases* its work on plaintiff's, or incorporated plaintiff's work into a "composite" work that contains other elements. *Fischer v. Forrest*, 286 F. Supp. 3d 590, 610 (S.D.N.Y. 2018), *aff'd*, 968 F.3d 216 (2d Cir. 2020); *see also Tremblay v. OpenAI, Inc.*, 2024 WL 557720, at *5 (N.D. Cal. Feb. 12, 2024); *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010); *Frost-Tsuji Architects v. Highway Inn, Inc.*, 2014 WL 5798282, at *7 (D. Haw. Nov. 7, 2014), *aff'd*, 700 F. App'x 674 (9th Cir. 2017). That is exactly Plaintiff's allegation here: HBO created an audiovisual work based on his, and incorporated it into the *Chernobyl* Episode. That does not support a removal of CMI claim.

### D. The Statute of Limitations Is Not Tolled

The Opposition acknowledges that equitable tolling requires a party to demonstrate a causal relationship between the alleged extraordinary circumstances and the lateness of the filing. Opp. at 23. The Amended Complaint, which includes no allegations as to how the war in Ukraine prevented Plaintiff from filing this action, has not done so.

## II. CONCLUSION

For the reasons stated above and in HBO's opening brief, HBO respectfully requests that Plaintiff's claims be dismissed in their entirety, with prejudice and without leave to amend.

Dated: April 19, 2024

                                      DAVIS WRIGHT TREMAINE LLP

                                      By:  *s/ Carl Mazurek*
                                      Carl Mazurek
                                      Rachel F. Strom
                                      1251 Avenue of the Americas, 21st Floor
                                      New York, NY 10020
                                      Tel: (212) 603-6414
                                      carlmazurek@dwt.com
                                      rachelstrom@dwt.com

                                      *Attorneys for Defendant Home Box Office, Inc.*